## Wytheville.

MAX MEADOWS LAND AND IMPROVEMENT CO. v. BRADY.

AUGUST 8, 1895.

1. CONTRACTS—*Rescission—Misrepresentations—Facts—Opinions.*—Upon a bill filed by a vendee of real estate for the rescission of a contract of sale, on the ground of fraudulent misrepresentations of the grantor in the procurement of the contract, the vendee, in order to obtain such rescission, must prove that the misrepresentations were of positive statements of fact made for the purpose of procuring the contract; that they were material; that they were untrue, and that the party to whom they were made relied upon them, and was induced by them to enter into the contract. An untrue statement, made as a mere matter of opinion, is, as a rule, not sufficient to entitle such vendee to relief where the parties deal upon terms of equality.

2. CONTRACTS—*Rescission—Fraud—Discovery.*—The effect of fraud in the procurement of a contract is to render it voidable only, and it is the duty of the defrauded party to elect, on the discovery of the fraud, to rescind it, or else he will be bound by it. The election may be shown by acts or conduct of the party, as well as by his words.

3. CHANCERY JURISDICTION—*Rescission—Defect of Title—Concealment—Covenants of Warranty.*—A court of equity will not entertain a bill filed by a vendee of real estate to rescind the contract of sale for defect of title, where it appears that said vendee has accepted a deed for such real estate, with covenant of general warranty; that he is in possession and his possession is undisturbed by any suit begun or threatened; that the vendor is making no effort to collect unpaid instalments of purchase money, and there is no averment of the insolvency of said vendor; unless he can show a defect of title respecting which the vendor was guilty of fraudulent concealment or misrepresentation, and of which the vendee, at the time, had no knowledge or means of discovery; but the court will leave the vendee to his remedy upon the covenants contained in his deed. For cases where a court of equity will interpose, see opinion of the court.

Appeal from decree of the Circuit Court of Wythe county, pronounced on the 18th day of August, 1893, in a suit in chancery wherein the appellee, John C. Brady, was complainant, and the appellant, the Max Meadows Land and Improvement Company, and others, were defendants.

*Reversed.*

The opinion states the case.

*Bolling & Stanley* and *J. H. Fulton*, for appellant.

*Walker & Caldwell* and *W. S. Poage*, for appellee.

KEITH, P., delivered the opinion of the court.

A bill was filed in the Circuit Court of Wythe county by John C. Brady, asking the rescission of a deed dated the 25th day of October, 1890, executed by the Max Meadows Land and Improvement Company for a lot of ground set out and described in said deed.

From an inspection of the record the following facts appear :

The Max Meadows Land and Improvement Company, having purchased land from Randall McGavock and others, divided it into lots, which it advertised for sale, representing through its advertisements and by a prospectus extensively distributed, that a 150-ton blast furnace was under construction ; that iron mines were being opened and connected with the furnace by a railroad ; that a brick-yard was in active operation and that certain industries had agreed to locate at its place, to-wit, a rolling-mill and horseshoe works, a planing-mill, and sash, door and blind factory, and that negotiations were in progress and would probably be concluded within the next few weeks for a machine shop, foundry, boiler and engine works, and that these industries would employ from seven hundred to one thousand men and

would insure a population of three thousand to four thousand. It, in like manner, represented that it had secured the services of a competent manager, having a large acquaintance among the manufacturers of the North, who would make it his especial business to attract other industries ; that negotiations were in progress with quite a number, and that there was every reason to believe that within the next six months or a year many additional manufactories would be secured and the population would be largely increased.

The plaintiff represents that the statements thus set forth in the prospectus were falsely and fraudulently made to induce him to purchase, and that, relying upon these representations, he, on the 25th day of October, 1890, did purchase a lot of ground, and agreed to pay $1,730 for it, of which sum he paid one-third cash and subsequently paid one-half of the balance, leaving the third and last instalment of $576.66, with interest thereon, still due and unpaid.

It appears that to secure the deferred payment the plaintiff, Brady, executed a deed of trust, of even date with the deed from the Max Meadows Land and Improvement Company to him, by which he conveyed the lot so purchased to Joseph S. Clark, trustee, upon trust that if the deferred instalment should not be paid at maturity the property conveyed was to be sold to satisfy it.

He charges that the Max Meadows Land and Improvement Company, by its officers and agents, and by its handbills and advertisements, made certain other false and fraudulent representations with reference to the growth of Max Meadows; among them, that a large hotel would be built, and that the Norfolk and Western Railroad Company proposed to erect a handsome stone passenger station, on ground reserved for that purpose, and that its construction would be commenced within the coming year. He alleges that the Max Meadows Land and Improvement Com-

pany, by its deed aforesaid, conveyed the lots so purchased, with covenants of general warranty, and that when he made the purchase he supposed that he had purchased an unencumbered property; that Randall McGavock and others, from whom the Max Meadows Land and Improvement Company purchased the tract of land, in which is embraced the lot which is the subject of this controversy, prior to their sale to the Max Meadows Land and Improvement Company, executed to S. W. Jamison, as trustee for A. M. and W. M. Fuller, a deed of trust to secure to the Fullers the sum of $20,000, and that said lien or encumbrance still remains unpaid and unsatisfied; that the tract so conveyed to Jamison, for the benefit of the Fullers, is the same land afterwards conveyed by Randall McGavock and others to the Max Meadows Land and Improvement Company, and the deed of trust to Jamison for the benefit of the Fullers is referred to and made part of the deed from McGavock to the Max Meadows Land and Improvement Company. The deed from McGavock and others to the Max Meadows Land and Improvement Company is filed as an exhibit in the cause.

The plaintiff avers that he would never have entered into the contract, and made the purchase of the lot named, had it not been for the false and fraudulent representations of the company, or if the company had disclosed to him the encumbrance on the lot and the defect of the title thereto.

He makes the Max Meadows Land and Improvement Company, Joseph S. Clark, trustee, A. M. and W. M. Fuller and S. W. Jamison, parties defendant to the bill, and prays for a rescission of the contract; that he may have a decree for the recovery of the money already paid by him; and that the defendants may be enjoined and restrained from collecting the bond for the last instalment of purchase money, amounting to $576.66.

The Max Meadows Land and Improvement Company

answered the bill. It denies all the allegations of fraud. It admits the purchase by the company of the Max Meadows land from McGavock, and the sale of the lot to the plaintiff upon the terms stated in the bill. It admits the deed of trust in favor of the Fullers. It denies that the defendant ever represented that it would cause a large city to be built at Max Meadows, or that the defendant made any other representations through its officers and agents except such as were made in the advertisements and prospectus, which were in the hands of the public for weeks before the sale took place, and by which the public and the plaintiff were fully informed of all that the defendant company had done and contemplated doing in its effort to build a town at Max Meadows, and avers that the public and the plaintiff were honestly put in possession of all facts known to the defendant. It avers that all of the industries and improvements that were promised have been built, and that those which the defendants stated were being negotiated for were, as the defendants fully believed, secured, as stated in the advertisement. The defendant denies that any representations or false statements were made to induce the plaintiff to make the purchase; it points out the fact that the sale was made at public auction, in perfect fairness to all, and that the plaintiff exercised his own judgment and discretion in continuing to bid for the lot until he drove off other competitors, and it was knocked down to him as the highest and best bidder.

Without going further into details of the facts, it may be stated that the defendant denies specifically every allegation and charge of fraud and misrepresentation, and especially it denies that the defendant concealed from the plaintiff the fact of the existence of the lien by deed of trust given by McGavock to S. W. Jamison, trustee, for the benefit of the Fullers.

The answer avers that the plaintiff and public were invited

to examine for themselves the defendant's title; that the deed of trust, and also the deed from McGavock to the defendant, were of record in the clerk's office of Wythe county, where they were open to the inspection of the plaintiff, and no representation whatever was made by the defendant with respect to the title.

Upon the issues thus made in the pleadings, evidence was taken, and the case coming on to be heard before the judge of the Circuit Court of Wythe county, he rendered a decree against the Max Meadows Land and Improvement Company for the full amount of the cash payment and of the first deferred payment, aggregating the sum of $1,153.34, with interest from the 25th day of October, 1890, until paid, and perpetuated the injunction as to the deferred payment of $576.66; and the case is now before us upon an appeal from that decree.

There is little room for controversy as to the facts. The representations relied upon to sustain the bill and to justify the rescission of the contract are all set out in the prospectus and advertisements filed with the bill. The representations relied upon may be divided into two classes—representations of matters of fact, and representations of matters of opinion.

In so far as the defendant company made statements of facts, it appears by the evidence that those statements were true; and so far as the statements were matters of opinion, it appears that those opinions were honestly entertained, and would in no event constitute sufficient ground for a rescission of the contract. The 150-ton blast furnace, represented to be under construction, was actually built; the representations as to the iron mines, which were to be connected with the furnace by a railroad, are shown to have been true; and it is in proof that a brick-yard was in active operation. The statement that a rolling-mill and horse-shoe works, and a planing-mill, and sash, door and blind factory

had agreed to locate at Max Meadows, is borne out by the proof, which contains also evidence that at the time of the sale negotiations were in progress with respect to the machine shops, foundry, boiler, and engine works. That those industries, if secured, would have employed from seven hundred to one thousand men, and that that number of employees would insure a population of from three thousand to four thousand, were obviously but estimates predicated upon the success of the efforts to secure the industries enumerated, and cannot properly be considered as an unconditional assurance upon the part of the company of the existence of those industries as a matter of fact, and still less as a guarantee of the number of men to be employed, or the population to be expected as a result of their establishment.

The distinction between representations of fact and of opinion has been so clearly set out in the recent opinions of this court that we feel it unnecessary to do more than to refer to them. They show that the misrepresentations which will sustain an action of deceit, or a plea at law, or a bill for the rescission of a contract, must be positive statements of fact, made for the purpose of procuring the contract; that they must be untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract. *Grim* v. *Byrd*, 32 Gratt. 293; *Wilson* v. *Carpenter*, 91 Va. 183, and *Watkins* v. *West Wytheville Land and Improvement Co.*, (decided at the present term,) *ante* p. 1. In *Crump* v. *United States Mining Co.*, 7 Gratt. 352, it was decided that if, in the written proposals for a sale of stock in a mining company, the representations contained therein are false as to any material fact, by which the purchasers have been misled to their injury, and in which they are presumed to have trusted to the vendors, then the contract, founded upon such representations, is void, whether the vendor knew the representations to be false at

the time they were made or not, and whether made with fraudulent intent or not.

In *Grim* v. *Byrd*, 32 Gratt., which was a bill in equity for the rescission of a contract, Judge Staples, speaking for the court, at p. 300, declares that " the doctrine is well settled in the United States that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, is ground for a rescission by a court of equity, although the party making the representation was ignorant as to whether it was true or false; and the real enquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it in entering into the contract." And, at p. 301, he says: " The representations must, as a general rule, be of a fact as distinguished from a mere matter of opinion, unless the parties are dealing upon unequal terms, and one has means of information not equally open to the other."

It is needless, however, to multiply citation of authorities to show that the law is as stated in *Grim* v. *Byrd* and *Wilson* v. *Carpenter*, above referred to. Both the appellant and the appellee rest their several contentions upon it. The effect of the fraud upon the contract is to render it voidable only, and it is the duty of the deceived party to elect, on the discovery of the fraud, to rescind it, or else he will be bound by it. In Fry on Spec. Per., sec. 703, it is stated that " in the case of a transaction grounded on fraud, the party deceived must, on the discovery of the fraud, elect to rescind or to treat the transaction as a contract."

In 2 Add. on Con., p. 772 *et seq.*, it is said : " A party who intends to repudiate a contract on the ground of fraud, should do so as soon as he discovers the fraud ; for if, after the discovery of the fraud, he treats the contract as a subsisting contract, or if, in the interval whilst he is deliberating, an innocent third

party has acquired an interest in the property, or if, in conse-
quence of his delay, the position even of the wrong-doer is
affected, he will be deemed to have waived his right of
repudiation, and must then bring an action for damages for
the deceit.    And whenever a party to a contract has a right
to elect whether he will avoid it or treat it as a subsisting
contract, his election may be manifested by acts as well as by
words, and, when once made, is final, and cannot be retracted."
And, further on, the same author says: "The discovery of
the new incident in the fraud, which only strengthens the
evidence of the original fraud, cannot revive a right of
repudiation which has once been waived." These proposi-
tions of law are, indeed, elementary, and it is hardly neces-
sary to fortify them by the citation of authority.

The Max Meadows Company, having purchased land in
order to make a profit by selling it in town lots, proceeded in
the usual way to lay off streets, to build hotels and water-
works, and to induce manufacturing enterprises employing
large numbers of operatives to construct their plants upon
its property.    To this end it advertised extensively.    Every
circumstance of climate and of situation was set forth in the
most attractive manner, and all this it had a perfect right to
do without incurring the imputation of the slightest impro-
priety.    As an evidence of the good faith and of the confi-
dence its managers felt in the value of its properties, and the
ultimate success of its efforts to develop it, the record
establishes that, before a lot was offered for sale, a very large
sum of money was expended; and, finally, it pledged itself in
its prospectus that "if for any reason which cannot now be
conceived, the above industries, or other industries to employ
an equal number of men, should not be absolutely secured
within six months from date of sale, October 25, 1890, the
purchasers of lots will be given the option of having the sale
cancelled, the cash payments refunded and being released

from making deferred payments. This option must be exercised within fifteen days from the expiration of said six months." This should have had the effect of drawing the attention of the bidders sharply to the line of demarcation between those representations which the company intended should be relied upon as matters of fact, and those which were intended as mere expressions of opinion, and is strongly persuasive, if not conclusive, of its good faith.

The appellee had the most abundant opportunity to inform himself of the truth of every representation made, and of every step taken, by the appellant, from the inception to the termination of the enterprise. Everything was done in the light of day; there was nothing covert or concealed; and, if he made a bad bargain, the explanation is not to be found in the suggestion that his innocence and simplicity have been ensnared by the wiles of an unscrupulous vendor. The Max Meadows Company had made its purchase at a price far in excess of normal values. It sold to the appellee at an advanced price, after expending large sums of money in its improvement, and he in turn purchased, it may be supposed, in the expectation that fortune would so far favor his venture as to enable him to reap a reward for the risk he assumed. The minds of all men were, at that time, inflamed with the mania for speculation, and no doubt the parties to this transaction were not free from the delusions it produced. While it lasted, hopes were cherished and expectations indulged and expressed which, considered in the light of sober reality, seem wild and extravagant in the extreme, but which should not be branded as frauds. Upon this branch of the case we are of opinion that there was no such misrepresentation of fact as, under the influence of the principles of law above adverted to, would entitle the appellee to a rescission of his contract.

It appears, moreover, that after the lapse of a year, with

full knowledge of all that his vendor had promised, of all that it had performed, of all that it had done, and of all that it had failed to do, the vendee, so far from disaffirming the contract into which he was induced to enter, as he now says, by fraudulent misrepresentation of the appellant, distinctly ratified and confirmed it by voluntarily discharging the first deferred instalment of the purchase money. If, therefore, the contract had in its inception been voidable, this act of ratification would be construed as a waiver of the right to repudiate it.

The other ground relied upon by the appellee is, that he purchased with the expectation that he would get an unencumbered title, and that, as we have seen in the statement of facts, there rests upon the land purchased by the Max Meadows Land and Improvement Company of Randall McGavock a deed of trust to S. W. Jamison for the benefit of the Fullers, which constitutes an encumbrance upon this and all other lots embraced in the tract covered by that deed.

If the Max Meadows Land and Improvement Company were here asking the specific performance of the contract of sale upon the part of John C. Brady, the outstanding title in Jamison, trustee, and the encumbrance thereby created, could be relied upon to defeat the recovery; but in the case before us the contract has been executed, and the appellee has received what he contracted for, a deed with a covenant of general warranty of the land purchased by him. He is in possession, and his possession has been undisturbed by any suit begun or threatened. It is not alleged that the Max Meadows Land and Improvement Company, the grantor of the appellee, is insolvent, or that it was making any effort to collect the unpaid instalment of the purchase money by an enforcement of the deed of trust given to secure it, or by suit, or otherwise.

· In the case of *Beale* v. *Seiveley and others*, 8 Leigh 658,

Judge Tucker, in deciding a somewhat similar case, says that the "vendee has in possession the identical land that he purchased. He has a deed for it, with general warranty, from a vendor whose solvency he does not venture to question. * * * He has never been evicted, or sued, or threatened with a suit, by any other claimant." Further on, in the same case, after discussing the effect of taking a deed with special warranty, and showing that in that case the rule of *caveat emptor* strictly applies, and that the vendee takes the hazard of the title, he points out the distinction where a general warranty is required and given, and continues: "As in the case of special warranty, he discharges himself of *all* responsibility, and only sells the chance of a good title, so, where he enters into a general warranty without other covenants, he makes himself only responsible for eviction. * * * In these cases, therefore, the vendee is confined to the covenant of general warranty. He has chosen, or at least agreed upon, his remedy, and to that remedy he must be tied down. However bad his title, he cannot sue upon his warranty unless he be evicted; and, if he cannot do so at law, upon what principle can equity make the vendor liable beyond the terms of his contract? A contract without other covenants than a warranty is, in effect, an agreement between the vendor and vendee that the vendor is never to be responsible until the vendee is turned out by superior title." If, however, a defect of title exists, which is known by the vendor and by him concealed from the vendee, or if the vendee had no means of knowing it, "then the purchaser may either maintain an action at law for the deceit or have a rescission of the contract itself by an appeal to a court of equity." Judge Tucker concedes that in Virginia there has been upon this subject more laxity in practice, but, notwithstanding this relaxation, he declares: "I am aware of no case in which the rights of the party have been extended in equity beyond his

covenants.   Until the contract is complete indeed by the execution of deeds, it is fully within the power of the court, which will not decree execution where it will be unreasonable, or where the title is essentially defective.   But after a deed has been made and accepted, though our courts have given relief in anticipation of an eviction which is pending, accompanied by the danger of insolvency, they have never gone one jot beyond the covenants, except where the fraud of the vendor gives rise to a distinct cause of action independent of the covenants.   Although, therefore, we may enjoin a judgment or sale on the ground that the creditor is proceeding under his deed of trust, or that a suit is threatened and the vendor is in declining circumstances, yet we can never interfere unless the seller has made himself, by some covenant, responsible for the defect complained of, or by fraudulent concealment has subjected himself to an action at law for damages, or to relief in equity to rescind the contract for the fraud."

It would appear, then, that the fraud, which will entitle the purchaser to ask for the rescission of his contract in equity, is that which consists in misrepresentation of facts or in the concealment of facts from which the defect of title arises, which facts the vendee had no other means of knowing. 2 Swanst. 287.   " If then," Judge Tucker says, " the vendor does not know of the defect, or, knowing it, does not conceal it, or if the vendee does know of it, there is no ground of relief.   The vendee must prove three things : first, the defect; second, knowledge and suppression by the vendor ; third, ignorance on the part of the vendee.   And as to the second matter, the *scienter* is essential."

We have quoted thus fully from the case of *Beale* v. *Seiveley*, because the principles of law are there laid down with clearness and precision, and the authority of that case has, so far as we are informed, never been called in question.

In *Peers* v. *Barnett*, 12 Gratt., at page 416, Judge Allen, referring to and, as it were, interpreting the case of *Beale* v. *Seiveley*, uses the following language: "It was there decided that where a vendee is in possession of land under a conveyance with general warranty, and the title has not been questioned by any suit prosecuted or threatened, such vendee has no claim to relief in equity against the payment of the purchase money, unless he can show a defect of title respecting which the vendor was guilty of fraudulent concealment or misrepresentation, and which the vendee had at the time no means of discovering."

A distinction is to be observed between the relief which goes to the extent of the rescission of the contract complained of, and that which merely restrains the sale of the encumbered lands until the title is made clear.

The principle that a court of equity will not sell, or permit a sale of land with a cloud hanging over the title, is affirmed in a great number of cases. We think we may say, after a careful examination, that nearly, if not quite all the cases relied upon by counsel for appellee are cases which either illustrate this principle, or were suits brought for the specific performance of contracts, or were cases in which the insolvency of the vendor appeared, or in which there had been a fraudulent concealment of the defect in title, or, at the least, an ignorance of the defect upon the part of the vendee, or the vendor was taking active steps, either by suit or under a deed of trust, to collect the unpaid purchase money. We have examined the following cases and authorities cited in the appellee's brief, and feel warranted in making this statement. *Griffin* v. *Cunningham*, 19 Gratt. 571; Pom. on Contracts, 193 and 203; *Jackson* v. *Liggon*, 3 Leigh 161, 189; *Hoover* v. *Calhoun*, 16 Gratt. 109; *Goddin* v. *Vaughan*, 14 Gratt. 102, 117; *Christian* v. *Cabell*, 22 Gratt. 82; *Hendricks* v. *Gillespie*, 25 Gratt. 181; *Bryan* v. *Loftus*, 1 Rob. 12; and *Garnett* v. *Macon*, 6 Call. 308.

It appears, then, that the appellee purchased a tract of land, of which he has been put in possession; that he has received a deed for it, with covenants of general warranty; that his possession has been neither disturbed nor threatened; that his grantor is not insolvent, and has taken no steps by enforcement of the deed of trust or otherwise to collect the unpaid purchase money; that there was no concealment of the encumbrance which rests upon the land, the existence of which was plainly set forth upon the face of the deed under which the appellee derives title to the land purchased, and of which, therefore, he must be presumed to have had notice. Upon the case stated the law is with the appellant.

If the objection shall be urged to this conclusion that it leaves the appellee with a cloud resting upon his title, the answer is, that he is in the precise position which he contracted to occupy, and, as long as he is undisturbed, he has no ground of complaint which entitles him to invoke the aid of a court of equity, which, as it has been said, may "mend the consciences of men, but not their assurances." Whenever the appellant seeks to enforce his deed of trust, without having first lifted the paramount lien, a court of chancery will, at the instance of the appellee, be ready to interpose and grant such relief as the nature of his case may then require.

We are of opinion that the appellee has failed to make out a case for the rescission of his contract; and is therefore not entitled to the relief given him in the decree complained of, which must be reversed.

*Reversed.*