𝕸𝖆𝖙𝖍𝖊𝖜𝖛𝖎𝖑𝖑𝖊.

ANDERSON v. THE CRESTON LAND CO.

JULY 7, 1898.

Absent, Cardwell, J.

1. PRINCIPAL AND AGENT—*Acts of Unauthorized Agent—Affirmance—Case in Judgment.*—A principal may affirm or repudiate the act of an unauthorized agent upon receiving notice of it. Having once deliberately affirmed it after proper information, he is bound by the contract made for him. In the case in judgment the evidence shows that appellants, with sufficient knowledge of the circumstances attending the transaction, affirmed the act of their unauthorized agents.

2. RESCISSION—*False Representations — Opinions—Facts.* — Assurances by agents of a land company that the company will lay out and grade certain streets, and will construct water works, are expressions of opinion and not statements of fact, and the failure of the company to make good the assurances does not constitute a ground for the rescission of a contract induced thereby.

3. COVENANT AGAINST ENCUMBRANCES—*Prior Deed of Trust—Provisions for Release.*—A covenant to convey title free of encumbrance is not broken by the existence of a deed of trust on the land conveyed, where the purchase money has not been paid to the vendor, and the deed of trust provides that the lien thereof shall be released upon receipt of the purchase money for any portion of the land sold.

4. JOINT PURCHASER AGENT FOR VENDOR—*Objection on Appeal for First Time.*—An objection that an agent for the sale of land, who became a joint purchaser with defendants, was also interested on behalf of the vendor cannot be made for the first time on appeal.

Appeal from a decree of the Circuit Court of Roanoke county pronounced at its April term, 1896, in a suit in chancery wherein the appellee, The Creston Land Company, was the complainant, and appellants and others were the defendants.

*Affirmed.*

The opinion states the case.

*Alexander Coke* and *S. D. Davies,* for the appellants.

*Johnson & Phlegar* and *W. W. Moffett,* for the appellees.

KEITH, P., delivered the opinion of the court.

The decree appealed from was rendered by the Circuit Court of Roanoke county under the following circumstances:

The appellants, John T. and George E. Anderson, found themselves, in August, 1890, in the town of Salem, Virginia, as guests of their uncles, G. J. and R. H. Ligon. At that time there was great activity in the real estate market in that vicinity. Companies were being chartered and organized for the purchase of land to be subdivided and sold as town lots. Prices were advancing from day to day, and purchasers, upon the payment of a small sum in cash, often realized in a short time a considerable profit. Such transactions proved to be most attractive. All were anxious for the opportunity to make money without labor, and apparently without risk. While in Salem, the appellants purchased three lots, one from the Lakeside Land Company, and two from the Creston Land Company, of which G. Jones Ligon, their uncle, was the president. They also contemplated the purchase of a third lot from a Mr. Zirkle, provided the title to it on investigation proved satisfactory, and, on returning to Richmond, left the sum of $405 in the hands of their uncle, $5.00 to pay for an examination of the title, and the residue to go as a payment upon the purchase money. The purchase from Zirkle was not consummated, and the Ligons, instead of returning to the Andersons the money in their hands, took it upon themselves to invest it as follows: They formed a "syndicate," as associations for the purchase of property for speculative purposes were called, composed of the

Andersons, Zirkle, Harveycutter, and themselves. This association purchased 10 lots from the Creston Land Company for
$3,450, one-third to be paid in cash, and the balance in one
and two years. The Andersons were each to have an undivided one-fifth interest in the purchase, and the lots were to
be conveyed, free from all encumbrances, upon the payment
of the purchase money. The Andersons knew nothing of
this transaction at the time, but in about two months they
were informed by a letter from their uncle, Mr. Ligon, that he
had invested their money remaining in his hands in the purchase of lots from the Creston Land Company, and that it lacked
$49.20 of paying the amount due by them at the date of the
letter. After consulting together, the Andersons agreed that
their uncle had no right so to use their money without asking
their consent, but, as John Anderson says in his deposition,
" as he (the uncle) stated in his letter that they had made a
big bargain, and that we would never have any more money
to pay, we decided that as it was only $24.60 apiece more that
we would have to contribute, my brother sent him a check for
$49.20." George Anderson gives substantially the same
account, and adds that he " was very much outdone when I
heard of the transaction, because I had emphatically refused
to buy any more property of the Creston Land Company except the two lots we had bought of our own accord, and I
would myself then and there have repudiated the whole
transaction if they had not been relations of our family, and
their whole assurances so very fair."

It may be observed here that the terms of purchase of the
10 lots bought by the " syndicate," of which the Andersons
were made members without their authority previously given,
were identical with the terms upon which they themselves
purchased two lots from the Creston Land Company. They
allege that while negotiating for the purchase of those two lots
they were assured that streets would be graded and put in first-
class condition ; that a reservoir would be built upon the prop-

erty of the Creston Land Company from which pure spring
water would be carried through pipes to all the streets; that
several persons contemplated the erection of dwellings upon the
property; and finally, that the purchasers were to have a deed
for their lots free from all encumbrances. When the deferred
payments upon these lots became due the appellants objected,
because these assurances had not been fulfilled, and it was as-
certained that the title was encumbered, but, upon the encum-
brances being removed and a sufficient deed tendered to them,
they paid the balance due and obtained their title.

Now appellants claim that when informed that their uncle
had invested in lots of the same company, they had a right to
rely upon the assurances given with respect to these two lots,
and this may be conceded, but the claim and concession with
respect to the conditions and incidents of the purchase tend
strongly to support the inference that the terms of sale were
identical. It is admitted that no previous authority had been
given the Ligons to make the investment which is the subject
of this controversy. Upon receiving notice of it, therefore,
the Andersons were at liberty to affirm or reject it; to ratify
or repudiate the assumed agency of the Ligons. It cannot
be denied that their act in sending the check for the balance
of the cash payment was a ratification of the unauthorized act
of their agent. They contend, however, that it was made in
ignorance of material facts. They admit in their answer the
receipt of a letter from Ligon & Bro. in the course of a month
or so after they left Salem, " informing them that they (Ligon
& Bro.) had invested the money left with them in lots pur-
chased of the complainant for a speculation; that said lots were
represented by complainant to be free from encumbrance and
of perfect title, and that complainant promised to supply them
with pure spring water, and to open and construct streets and
walkways for the comfortable ingress and egress of their occu-
pants "; but they deny that they knew that others were asso-
ciated with them in the purchase in addition to the Ligons, or

that they knew anything of the notes or deed of trust mentioned in the bill of plaintiff. It is not claimed that they are liable jointly with others for any portion of the purchase money due upon the transaction. Plaintiff only seeks to recover of them their proportionate parts of the purchase money, and we are of opinion that, to the extent of their interest in the subject, they were duly advised at the time they forwarded the check for $49.20 in compliance with the demand made upon them.

The letter written to them has not been produced, so other evidence has to be resorted to in order to determine what facts with respect to the transaction were known to the Andersons at the time that check was drawn. They say that the letter informed them of the purchase by the " syndicate," and that the amount in the hands of Mr. Ligon lacked $49.20 of paying what he had advanced on their account; that it assured them that they had made a big bargain and " that they would never have any more money to pay." When they purchased the two lots the identical assurance was made to them, " that they would never have any more money to pay," the meaning of the assurance being that, in the judgment of Ligon, lots would advance in price and could shortly be disposed of at a profit, and such doubtless was the expectation with which they entered into the transaction. What need of an assurance ? What propriety would there have been in assuring them that they would never have any more to pay if what they had already paid satisfied the obligation of the contract into which their uncle had entered on their behalf ? The truth, without doubt, is as stated by the appellant, George Anderson, and already quoted : " I was very much outdone when I heard of the transaction, and would have repudiated it if they had not been relations of our family, and their whole assurances so very fair." We see the appellants, then, tempted on the one hand by the hope of profit so confidently assured to them, and moved on the other by consideration growing out of their relationship

to the agent who had, without authority, assumed to act for them, and, with the knowledge imparted by the letter which they received and the previous transactions between themselves and the Creston Land Company, they determined to ratify the transaction without further inquiry upon the information which they already possessed. Mechem on Agency, secs. 128 and 160; Wharton's Com. on the Laws of Agency, sec. 92.

The transaction, as we have said, was speculative in its character. The price of lots was changing from day to day. It was, therefore, of importance to all concerned that the election which the appellants enjoyed to ratify or repudiate the transaction should be promptly exercised. They were informed of the purchase within a few weeks after it was made. So far from disaffirming the unauthorized act of their agent, they, with sufficient knowledge of the circumstances attending it, approved his conduct. By so doing the Creston Land Company was lulled into repose, and in the meantime the prices of such properties have shrunken to a small fraction of those obtained in 1890. That such an act under such circumstances is a ratification, and cannot be recalled, is fully established by the authorities. *Max Meadows Land & Imp. Co.* v. *Brady,* 92 Va. 71; *Wilson* v. *Hundley,* just decided, *ante* p. 96.

Appellants also claim that the assurances made to them with respect to what the company would do in the grading of streets and the construction of water works, &c., not having been performed, constitute a fraud which entitled them to a rescission of their contract and a recovery of the money which they have paid.

The assurances relied upon in this case were matters of opinion and not of fact, and the law applicable to them has been so recently and so fully considered by this court that nothing more need be said than to refer to decided cases. *Wilson* v. *Carpenter,* 91 Va. 183; *Watkins* v. *West Wytheville Land, &c., Co.,* 92 Va. 1; *Max Meadows Land & Imp. Co.* v. *Brady, supra; Grosh* v. *Ivanhoe Land Co.,* 95 Va. 161.

With respect to the alleged encumbrance upon the title, it appears that there was a prior encumbrance by deed of trust upon the property purchased, in favor of Chalmers and others, and that deed also contains a covenant " that upon payment to them of the proceeds of sale, of any one or more parcels or lots of the said land, which the said company may at any time before a sale is made by the said trustee under this trust, sell, as provided by a resolution adopted by the board of directors of the said company at a meeting held on the 11th day of April, 1890, then the said parties of the third part will cause the trustee to release the parcels or lots so sold from the lien of this trust deed."

Under this provision of the deed releases were made of very many lots, among others, the two lots purchased by the appellants in person from the Creston Land Company.

Another contention of the appellants is that this transaction ought not to be maintained and enforced because G. Jones Ligon was the president of the Creston Land Company, and Ligon & Bros., who were members of the purchasing " syndicate," were the land agents through whom the sale was effected, and received a commission from the appellee for their services; that the Ligons, therefore, one as president of the Creston Land Company, and both of them as land agents, occupied such improper and and incompatible relations to the transaction as rendered it fraudulent as to appellants.

Upon this subject it is sufficient to say that there is no hint of it in the pleadings, and therefore it cannot be made a ground for relief. The evidence disclosing the facts upon which in this behalf the appellants rely to vitiate the transaction for this cause might, if scrutinized, be found sufficient to furnish an answer to the charge, but we decline to enter upon the enquiry for the reason already assigned. It presents an issue not made in the pleadings.

We have only considered questions arising upon the record between the appellants, the Andersons, and the appellee, the

Creston Land Company.    There were other parties to the suit, but as their relations to the transaction and to each other were not the subjects of controversy the discussion of law and fact has been confined to the parties between whom the issues have been made.

For the foregoing reasons we are of opinion that the decree of the Circuit Court of Roanoke county, must be affirmed.

*Affirmed.*