## Richmond.

## PERROW V. WEBSTER.

### January 16, 1919.

1. JUDGMENTS AND DECREES—*Setting Aside — Fraud — Allegation that Party was Misled by His Adversary's Attorney.*—A bill in the nature of a bill of review alleged that defendant's attorney had fraudulently misled the complainant into absenting himself from the taking of the depositions in the cause, and had improperly and wrongfully procured the decree in his absence and without his knowledge.

   *Held:* That the burden was on complainant to establish the grave charge he was making, and even his own version of what transpired on the occasion in question was insufficient to sustain it, while the testimony of the attorney who is alleged to have misled him was clear and convincing to the contrary.

2. TAXATION—*Redemption After Sale—Payment to County Clerk.*— Under sections 650, 651, Code of 1904, the county clerk has no power to receive delinquent taxes and release the lien thereof where land is sold to others than the Commonwealth, unless the purchaser was at the time not a resident of the county, or could not be found therein, or unless the purchaser had refused to accept payment of said delinquent taxes from the former owner of the land.

3. TAX DEED—*Seal—Void or Voidable.*—A tax deed which wanted a seal and failed to comply in form with certain statutory requirements is not void but voidable and is susceptible of remedy by a new deed. If the recitals in a tax deed do not conform to the facts, the officer may execute a second deed. The decisions sustaining this rule are based on the principle that it is the duty of the officer to execute a good and sufficient deed of the land sold to the purchaser. He can be compelled to do this by mandamus, if he neglects to perform his duty.

4. CROSS-BILL—*Answer as Cross-Bill—Process.*—In a suit in equity, no process was issued on the answer of certain defendants, which was prayed to be treated as a cross-bill, and no answer was filed to it by another defendant who had no notice thereof. It was not claimed that this defendant ever appeared to the original bill or to the answer, and it is clear, therefore, under elementary rules of practice, that the latter could not be

41

treated as a cross-bill against him without process having been issued thereon, and where the cross-bill prayed for the cancellation of a tax deed, and no such special relief was asked for in the original bill, it could not be said that the cross-bill did not ask for any relief substantially different from that prayed for in the original bill.

5. JUDGMENTS AND DECREES—*Conformity of Decree With Pleadings.*—Where a bill described as a bill *quia timet,* but which more accurately might have been designated as one for specific performance, lacked the requisites of a bill for rescission, and no fraud or mistake was alleged, it was error for the court to decree a rescission of the contract in question. The specific prayer of the original bill was that the title to the land in question be perfected and the cloud thereon be removed. It appears from the record that this relief could have been awarded by requiring defendant to obtain a new and proper deed from the clerk; and this, therefore, is the relief to which complainant, under the case as made out by his own pleading and proof, was entitled.

6. VENDOR AND PURCHASER—*Rescission.*—Where a deed of vendor was not merely a general warranty deed, but covenanted also that he had the right to convey and would execute any further requisite assurances, the land having been bought as a whole, and a defect in title to part of the land would affect the main object of the purchase, the purchaser cannot be adequately compensated in damages by a recovery of a *pro rata* part of the purchase money, and a rescission of the contract is the only appropriate and adequate remedy to be decreed if the covenants in the deed are not made good.

Appeal from a decree of the Circuit Court of Campbell county. Decree for complainant. Defendant appeals.

*Reversed.*

The facts, issues and proceedings in this cause are somewhat complicated. We shall state only so much thereof as appear material to a decision in this court.

By deed dated March 25, 1910, Wm. R. Perrow and wife, for a recited consideration of $400 cash, conveyed to Daniel Webster, with general warranty and with the usual modern covenants of title, a tract of land containing about 50 acres, composed of two smaller tracts, one of about

12 acres and the other of about 38 acres.   The twelve acre tract was held by Perrow under a tax deed made to him by S. C. Goggin, clerk, in consummation of Perrow's purchase under a sale for taxes delinquent in the name of (Mrs.) M. A. Wingfield; and the 38 acres were a part of Perrow's original home tract.

In February, 1916, Webster filed a bill in equity against Perrow and the alleged heirs of M. A. Wingfield, deceased, which, after reciting the deed above mentioned, alleged, *inter alia*, that Webster "had the utmost confidence in Perrow and relied on his representations that the title to the whole of the said 50 acres of land was perfect, and that * * * complainant had no knowledge or information that title to any part of the 50 acres was in any way clouded;" that no objection was raised to the title to the 38 acre tract, but that, while the records disclosed that the delinquent tax sale of the 12 acres was made by the treasurer to Perrow in 1906 for taxes delinquent in the name of M. A. Wingfield for the year 1904, the tax deed from the clerk was not made until 1909, and the land had in the meantime, in 1907, been "redeemed by M. A. Wingfield and the amount then ascertained to be due was paid to the clerk, S. C. Goggin, who thereupon released the lien of said taxes according to law," and that the tax deed was otherwise irregular and incomplete as appeared from a copy thereof exhibited with the bill; that the 12 acres adjoins the 38 acres, and the two compose one tract; that "by reason of the said defective title, complainant has been unable to sell or exchange the said land," reciting two opportunities of sale lost by the condition of the title; that complainant had frequently requested Perrow to perfect the title to the 12 acres, or, if unable to make a good title thereto, to refund the purchase price of the whole tract and accept from complainant a reconveyance, with special warranty, of the whole tract, the latter alternative being again offered

in the bill; that Perrow had informed the complainant that M. A. Wingfield was dead and had given him the names of her heirs, but had not procured and delivered to complainant any quit-claim deed from them, or otherwise remedied the defects in the title to the land.

The material part of the prayer of the bill was, that the deed from Goggin, clerk, to Perrow be construed and the title to the 12 acres be perfected and the cloud thereon removed at Perrow's expense, and for general relief.

Perrow was duly served with process, but did not make any answer or enter any appearance to the bill.

Sue Nichols and others, as the heirs of M. A. Wingfield, filed an answer admitting that the 12 acre tract was returned delinquent for non-payment of the 1904 taxes, that it was sold by the county treasurer and purchased by Perrow, and that it was redeemed by Mrs. Wingfield, all as stated in the bill. This answer further stated that by some mistake or oversight the clerk had made the tax deed to Perrow after the land had been redeemed; and charged, further, that even if the land had not been redeemed, the tax deed was void, "because it does not set forth all the circumstances appearing in the clerk's office in relation to the sale, and also because the said deed is not under seal;" that neither Webster nor Perrow had any title to the 12 acres; that the deed from Perrow to Webster, as well as that from the clerk to Perrow was void, and that both constitute clouds upon the title of the respondents.

The answer then prays that the two last mentioned deeds be annulled, and, to that end, that the answer, if necessary, be treated as a cross-bill as to Webster and Perrow and wife, and they be required to answer the same; and that respondents be awarded all such other relief as their case might merit or require.

At the March term, 1916, a decree was entered taking the bill for confessed as to Perrow and wife, noting and

allowing the filing of the answer of Sue Nichols and others, and concluding as follows: "On consideration whereof, the court doth adjudge, order and decree that said answer may be treated as a cross-bill; and the plaintiff, Daniel Webster, and the defendants, W. R. Perrow and N. C. Perrow (his wife) are allowed to file their answers to said cross-bill, and the parties to take such depositions as they may desire, and by consent of all parties to this cause, by counsel, this cause is set for further hearing in vacation."

In August, 1916, pursuant to regular notice, the complainant proceeded to take his depositions. Perrow appeared at the time and place designated in the notice, but the witnesses were slow in arriving and he left before the depositions were taken. The circumstances bearing upon his failure to remain for the examination of the witnesses will appear in more detail in a subsequent and more pertinent connection. The proof taken on this occasion, which comprised the whole of the parol testimony in support of the bill, sufficiently established, *inter alia,* the following facts, for whatever they may be worth in the case, namely: That Perrow verbally represented to Webster that the title to the 50 acres was perfect; that Webster believed these representations and had no knowledge of any defect of title; that Webster lost more than one advantageous sale of the 50 acres because of the alleged defective title to the 12 acres; that the 38 acres and the 12 acres compose one boundary, the water, the cleared land and the only building (a cabin) all being on the latter; that the 38 acres would be of very little value without the 12 acres; that Webster had called Perrow's attention to the alleged defect in title; that Perrow admitted the existence of the defect, but made no satisfactory offer to remedy it; and that Webster was ready and willing to reconvey the 50 acres to Perrow upon the payment to him of $400 and interest and the costs of the pending suit; and that the allegations in the bill and

answer as to the time and manner of the redemption of the 12 acres were true, the proof showing specifically that Mrs. Wingfield redeemed the same "on the 7th day of August, 1907, by the payment of said delinquent taxes, interest and costs to said clerk."

At the September term, 1916, the court rendered a final decree, holding that the deed from S. C. Goggin, clerk, to Perrow, was null and void; that the 12 acres therein described "belongs to the heirs of Martha A. Wingfield"; that the deed aforesaid is a cloud upon their title, and the clerk of the court should mark the same cancelled and refer to this decree as authority; that the deed from Perrow to Webster, in so far as it attempts to convey the 12 acres is null and void and should likewise be marked cancelled; that a commissioner, thereby appointed for the purpose, should convey the 12 acres to the Wingfield heirs; that Webster "took the land conveyed to him by Perrow in good faith, relying on the covenants of title" in his deed, buying the land as a whole, and the same "would be practically worthless for the purposes for which bought" without the 12 acres; that, therefore, Webster should recover of Perrow and wife $400, with interest from March 25, 1910, and the costs of the suit and the cost of reconveying the 38 acres to Perrow; that upon the payment of this judgment, Webster should reconvey to Perrow the 38 acres with special warranty; and the cause was ordered stricken from the docket, with leave to any party in interest to have it reinstated without notice, if within twelve months, for the purpose of carrying out the decree.

Within the time prescribed by law, Perrow filed a bill in the nature of a bill of review against Webster and the Wingfield heirs, reciting the proceedings in the original cause, substantially as set out above, and praying for a reversal and annulment of the final decree therein and for general relief.

The grounds, so far as they need be stated here, upon which the decree was attacked were, 1st, that Webster's attorney had fraudulently misled Perrow into absenting himself from the taking of the depositions in the cause, and had improperly and wrongfully procured the decree in his absence and without his knowledge; and, 2nd, that the decree was erroneous for the following reasons appearing on the face of the record, namely: (a), that the attempted redemption of the 12 acres by Mrs. Wingfield was null and void because Perrow, the purchaser at the tax sale, was at that time a resident of the county and the clerk had no authority to accept payment of the delinquent taxes from the former owner; (b), that Perrow was never summoned to answer and had no notice of the cross-bill of the Wingfield heirs; (c), that the decree improperly allowed interest on the sum of $400 from the date of the deed to Webster, instead of from the date of the demand by him for restitution; (d), that the recital in the decree of March, 1916, that "by consent of all parties to this cause, by counsel, this cause is set for further hearing in vacation," was not true.

To this bill of review, Webster and the Wingfield heirs filed answers. Depositions were taken by both the complainant and the defendants. The contents of these answers and of these depositions need not be set out, except insofar as they may appear in the discussion of the assignments of error.

The cause having been thus matured upon the bill of review, the court, on July 14, 1917, rendered the decree to which this appeal was granted, and which, in substance, was as follows: That there was no merit in any of the contentions of the bill of review, except as to the date from which interest should be paid on the principal sum to be repaid Webster, and that therefore the decree of the September term, 1916, was reaffirmed in all respects except

that interest was allowed on said principal from the 17th day of January, 1916, instead of the 10th day of March, 1910; that the tax deed was made to Perrow after the payment to the clerk of the delinquent taxes; that the said deed is irregular and confers no title to the 12 acres; that Perrow is entitled to a lien thereon for the amounts paid by him, together with interest and costs as required by law, said amounts to be taxed by the clerk, and the Wingfield heirs to be allowed to pay them off within 60 days from the rising of the court; and that the suit be dismissed at Perrow's cost.

*H. C. Featherston,* for the appellant.

*W. M. Murrell, R. A. Russell* and *Jno. G. Haythe,* for the appellees.

KELLY, J. (after making the foregoing statement), delivered the opinion of the court.

[1] 1. The first assignment of error is that the decree of the September term, 1916, should have been set aside because of the alleged action of Webster's attorney in misleading Perrow into absenting himself from the taking of the depositions upon which the decree was based. The evidence is not sufficient to sustain this contention. Perrow was duly notified of the time and place of the taking of the depositions. He appeared accordingly, but the witnesses were very slow in making their appearance. After remaining at the office of counsel for Webster in Rustburg, where the depositions were to be taken, for about two hours, he left in order to catch a morning train back to his home in Lynchburg. He claims that he had discussed a compromise with counsel for Webster and left under the impression that nothing further would be done in the cause until

he had been further communicated with on the subject; but the burden was on him to establish the grave charge he is making, and even his own version of what transpired in Rustburg on the occasion in question is insufficient to sustain it, while the testimony of the attorney who is alleged to have mislead him is clear and convincing to the contrary. The circuit court, as shown by its decree, was "of the opinion that the charge of fraud was absolutely without proof to sustain it," and in this opinion we concur.

[2] 2. The next assignment of error is as follows: "As the county clerk has no power to receive delinquent taxes and release the lien thereof where land is sold to others than the Commonwealth, unless the purchaser was at the time not a resident of the county, or could not be found therein (which was not true in this case), or unless the purchaser had refused to accept payment of said delinquent taxes from the former owner of the land (which was likewise not true in this case), it was error for the court to hold that said 12 acre tract had been redeemed by payment to the clerk."

The proposition upon which this assignment is based is correct. Sections 650 and 651 of the Code are conclusive of the question.

[3] Nor was the error in the decree cured by its further finding that the tax deed was void for want of a seal and for failure to comply in form with certain statutory requirements. These defects rendered the deed voidable but not void and they were susceptible of remedy by a new deed. "If the recitals in a tax deed do not conform to the facts, the officer may execute a second deed. The decisions sustaining this rule are based on the principle that it is the duty of the officer to execute a good and sufficient deed of the land sold to the purchaser. He can be compelled to do this by mandamus, if he neglects to perform his duty." 3 Devlin on Deeds (3d ed.), section 1413, and cases cited there.

42

[4] 3. It is next insisted that "No process having been issued on the answer of Wingfield's heirs, which is prayed to be treated as a cross-bill, and no answer having been filed thereto, and appellant having no notice thereof, it was error to treat same as a cross-bill and to grant affirmative relief thereon, same being entitled to be treated only as an answer."

This position is likewise well taken. The proof shows, and it is not denied, that when the decree of March, 1916, which permitted the answer to be filed, was entered, Perrow had not retained and was not in any way represented by counsel. The recital therein that "by consent of all parties, by counsel, this cause is set for further hearing," etc., was plainly, though doubtlessly inadvertently, untrue as to him. It is not claimed that he ever appeared to the original bill or to the answer, and it is clear, therefore, under elementary rules of practice, that the latter could not be treated as a cross-bill against him without process having been issued thereon.

It is contended on behalf of the appellee that the lack of process on or appearance to the answer as a cross-bill was immaterial, because the cross-bill does not ask for any relief substantially different from that prayed for in the original bill. We cannot accede to this view. The specific prayer of the cross-bill is for a cancellation of the tax deed, and no such special relief is asked for in the original bill. It is true that both the original bill and the cross-bill contain alternative prayers for general relief, but, as we shall presently see, the occasion for the court to award relief under the general prayer did not arise.

[5] 4. The fourth assignment is as follows: "As the bill of the appellee, Webster, was a bill *quia timet*, and lacked the requisites of a bill for rescission, and no fraud or mistake was alleged, it was error for the court to decree a rescission of the contract between Perrow and Webster, and said

decree is in that respect void, as is also the decree of July 14, 1917, reaffirming same."

It might perhaps have been more accurate to designate the bill as one for specific performance, but, waiving this purely formal question, the substance of the assignment is sound, because the decree went further than the scope of the pleadings required or warranted under the facts as developed. It may be conceded that the allegations of the bill were such as to have entitled the complainant to a decree for rescission of the contract under the prayer for general relief, if it turned out that the defendant could not make a good title to the 12 acre tract. But the special prayer of the original bill was that the title to the 12 acres be perfected and the cloud thereon be removed at Perrow's cost. It appears from the record that this relief could have been awarded by requiring Perrow to obtain a new and proper deed from the clerk; and this, therefore, is the relief to which Webster, under the case as made out by his own pleading and proof, is entitled at the present stage of the cause.

[6] The remaining assignments of error do not call for any discussion. As to them we deem it sufficient to say that in our opinion they do not point out any error of which the appellant can rightfully complain, if it should hereafter develop that he is unable to procure a good and sufficient deed to the 12 acres. The whole case, so far as he is concerned, must turn upon his performance of his contract in this particular. While we do not regard the charges in the bill such as to impute fraud on his part in the clear and definite manner required in suits for rescission, we think the allegations and proof are such as to entitle the complainant to a rescission rather than a recovery of a part of the purchase money, in case the title fails as to the 12 acres. The decree complained of reaffirms the decree of September, 1916, which declares that "the land was bought as a whole

and would be practically worthless for the purposes for which bought without the" 12 acre tract, and this fact is satisfactorily established by the evidence. While there has as yet been no actual ouster of the appellee as to the 12 acre tract, the Wingfield heirs are actively asserting claim to it, and the title which Perrow had is, as it now stands, defective. His deed to Webster was not merely a general warranty deed, but covenanted also that he had the right to convey and would execute any further requisite assurances. The case is not, therefore, controlled by the rule that a purchaser in quiet possession under an executed contract with merely a general warranty must seek his remedy at law and is not entitled to a rescission in equity for a defect in title. In other words, the well settled doctrine applied in *Max Meadows Land Co.* v. *Brady,* 92 Va. 71, 22 S. E. 845, does not apply to the instant case. The land having been bought as a whole, and the defect in title affecting the main object of the purchase, the purchaser cannot be adequately compensated in damages by a recovery of a *pro rata* part of the purchase money, and a rescission of the contract is the only appropriate and adequate remedy to be decreed if the covenants in the deed are not made good.

We are of opinion to reverse the decree complained of, and allow the appellant a reasonable time within which to perfect the title to the 12 acre tract. If he succeeds in doing this, the cause should then be dismissed at his cost. If he fails to do this, it would then be proper for the lower court to enter a decree substantially in accord with the one now under review.

A decree to this effect will be entered in this court, and the cause remanded for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed.*