# Wytheville.

## POWELL, WHITEHURST & CO. v. BERRY AND OTHERS.

### JUNE 27, 1895.

1. CHANCERY PRACTICE—*Specific Performance.*—Application for the specific performance of a contract is addressed to the sound discretion of the court, and will not be granted unless the applicant shows that he has been ready, prompt, and eager to perform the contract on his part. If he has been in default, a court of equity will leave him to such remedy as he may have in a court of law.

2. CHANCERY PRACTICE—*Rescission—Cancellation.*—An application to a court of chancery to rescind or cancel a contract for the sale of real estate, like that for specific performance, is also addressed to the sound judicial discretion of the court, and the court not unfrequently refuses to rescind, when, under like circumstances, it would refuse to enforce. Rescission, however, seems to be limited to cases where there is either a palpable and material mistake concerning the substance of the thing contracted for, or when fraud and misrepresentation have been perpetrated on the applicant.

3. CHANCERY PRACTICE—*Case at Bar—Specific Performance—Rescission—Remedy at Law.*—Applying the foregoing principles to the case at bar the court will neither enforce nor rescind the contract, but remit the parties to such remedies as they may have at law.

Appeal from two decrees of the Circuit Court of Bedford county; one pronounced October 5, 1892, and the other November 3, 1892, in two suits in chancery heard together, in one of which the appellee, J. M. Berry, was the complainant, and the appellants were the defendants, and in the other, the appellants were the complainants, and the appellees were the defendants.

*Reversed in part and affirmed in part.*

The opinion states the case.

*Wright & Hoge*, for the appellants.

*J. Lawrence Campbell*, for the appellees.

HARRISON, J., delivered the opinion of the court.

The first question presented for determination in this case is whether or not the appellee, J. M. Berry, is entitled to demand of the appellants the specific performance of their contract of purchase of certain lots mentioned in the bill.

No principle is better settled than that which requires that the party seeking specific performance, must have shown himself ready, prompt and eager to perform the contract on his part.

Mr. Barton says: "Owing to the general rule that specific performance of a contract will not be enforced in equity unless the party seeking it has not been in default, but, on the other hand, has shown himself to be ready, eager, prompt, and desirous of maintaining his rights, the rule of laches is more strictly applied in cases of this character than in the ordinary suits for accounts, &c.; and hence, although in some instances, a long delay has been held insufficient to bar the complainant's rights, yet in others a very short time has sufficed for that purpose." Barton's Chancery Practice, 121, and cases there cited.

In *Bowles* v. *Woodson*, 6 Gratt. 78, Judge Allen said: "As the application for a specific performance is addressed to the sound discretion of the court, he who asks it must have shown himself prompt and willing to comply with the obligation of the contract on his part; and the prayer will not be granted if it would be inequitable towards the party against whom the prayer is made."

These are familiar and well settled principles, and guided by them, there can be little difficulty in reaching a sound and just conclusion in the case under consideration.

This transaction took place in November, 1890. The lots were sold by N. D. Hawkins & Co., real estate agents, representing the vendor, J. M. Berry, to Powell, Whitehurst & Co., the vendees. The cash payment of $1,950 was promptly made, and in February, 1891, the vendees delivered their bonds at six, twelve, and eighteen months for the deferred payments, amounting to $4,550.

It appears from the record that after the cash payment was made, and the bonds delivered, the vendees repeatedly demanded that J. M. Berry, the vendor, should execute and deliver them a deed. It appears that the vendor had not only had the cash payment, but had assigned the deferred purchase money bonds to third parties, and yet was guilty of the grossest laches and neglect in making his vendees a deed to the lots, no deed ever having been tendered until May, 1892, when it was filed as an exhibit with the bill in this case demanding specific performance of the contract of sale. The only excuse disclosed by the record for this delay in the making the deed, is the statement of Berry that he told his vendees, when they sent the bonds, to send a deed of trust securing them on the lots, and he would then make a deed.

This was an unreasonable demand. The execution of the deed of conveyance and the deed of trust should have been contemporaneous transactions. It was the duty of the vendor in this case to have been active and diligent in performing his part of the contract. He should have executed his deed, tendered it, and asked that the transaction be closed by the contemporaneous delivery to him of the deed of trust. It was not the duty of the purchasers to deliver the deed of trust first, *non constat* but that the vendor would be unable to make a good title. The vendees had already done more

than could be reasonably required of them in making the cash payment and executing and delivering their bonds before the deed was made. It appears from the record that this sale was made at a time when there was great activity in the sale of real estate; when towns and cities were being laid out without number, and lots were not bought for permanent investment.

The record shows that these lots were bought for speculation. Immediate re-sales was the order of the day; lots changed hands with great rapidity. Hence it was more important than under ordinary circumstances, that a vendor should, in the language of the law, be ready, eager, and prompt, in the complete discharge of every part of his undertaking, so that his vendee would be at no disadvantage in making sales if he should desire to sell.

It is insisted by appellee that the appellants have not been injured by his laches, because there was no time after their purchase that they could have sold. On the other hand, the vendees insist that but for the delay they could have sold; that they had offers for lots, and could not sell because they had no title. It is unnecessary to discuss, or consider this question. Whether the vendees were injured or not, makes no difference. The vendor had a duty to perform under his contract of sale. He alone is responsible for his failure to perform it; and he cannot escape the consequences of his neglect by speculating as to whether or not his vendees have suffered in consequence of his default.

It further appears from the record that one of the obligations resting upon the vendor under his contract of sale of these lots, was to lay the land upon which they were situated off into well graded streets, so that the lots would be accessible and more easily sold. It is admitted that this was never done, and the appellants insist that they were greatly damaged by this neglect of the vendor to perform his contract;

that they were unable to show the lots to persons wishing to buy until the streets were graded, and the lots defined. The Circuit Court recognized this duty and obligation of the vendor by providing in its decree that no sale should be made until the land from which said lots were sold had been laid off by J. M. Berry, the vendor, into well-graded streets, and the lots bought by the vendees well defined, so that they might be accessible.

These lots, thirteen in number, were sold under the decree of the Circuit Court and bought in by the vendor for the net sum of $294.90, which was credited on the deferred purchase money bonds sued on, and a decree rendered against the vendees for the residue, so that the lots sold by J. M. Berry to Powell, Whitehurst & Co. for $6,500, are, under the decree complained of, again made the property of said Berry at $294.90, and he also has the $6,500 of his vendees.

Whether or not this is the result entirely of the gross laches and neglect of the vendor in performing his part of the contract of sale, it is unnecessary to consider. Enough has been said to show that the vendor has fallen far short of performing his part of the contract with that degree of promptness, readiness, and eagerness, which is required of him when he comes into a court of equity to demand specific performance of his vendee. He who demands the execution of an agreement ought to show that there has been no default in him, in performing all that was to be done on his part. A court of equity will closely scrutinize the conduct of the party insisting on specific performance, and if he be in default, it will leave him to such remedy as he may have in a court of law.

For the foregoing reasons the court is of opinion that the appellee is not entitled to have specific performance in equity of the contract sued on, and that the Circuit Court should have dismissed the bill filed for that purpose, and left the complainant to such remedy as he might have in a court of law.

The second question to be determined arises upon the bill of injunction filed by the appellants, enjoining and restraining the commissioner from selling the lots under the decree of sale in the original suit. To this injunction bill all the complainants in the first mentioned suit were made parties defendant, and the plaintiffs ask that their contract of purchase of these lots be rescinded, their vendors required to refund the $1,950 paid in cash to them, and that the purchase money bonds executed and delivered be also returned. These two causes, the original suit and injunction suit were heard together, and the court refused to rescind the contract, and dismissed said injunction bill.

"The application to a court of equity to rescind or cancel contracts for lands, like that for their specific execution, is addressed to the sound judicial discretion of the court; and, in the exercise of that discretion the court not unfrequently refuses to rescind, when it would also refuse to decree the contract to be performed; thus leaving the parties to their remedies at law." 2 Minor's Inst. 895.

The cases in which rescission usually takes place seem to be limited to those where there is either a palpable and material mistake in the substance of the thing contracted for, or where fraud and misrepresentation has been perpetrated upon the applicant for the aid of the court.

In the case before us, no sufficient grounds are alleged in the bill, or proven, upon which to base a rescission of this contract. It is true that the vendor agreed to lay the land, upon which these lots were situated, off into well-graded streets, but this formed a part of his contract, which, as we have already seen he failed to perform. This was not that character of false representation that is a basis for rescission.

It was a breach of contract that can be compensated in damages. We are of opinion, therefore, that the Circuit

Court properly refused the relief prayed for and dismissed the bill.

The relief asked for in both these bills is a purely equitable remedy, and where the court cannot in the exercise of that sound discretion required of it, grant the prayer of the applicant for its aid, there is nothing for it to do but to dismiss the bill, and leave the parties to seek such other remedies as they may have.

It is not one of that class of cases where a court of equity, having all the parties before it, can go on and do complete justice.

It follows from what has been said, that the decree complained of must be affirmed in so far as it refused to rescind said contract and dismiss the bill of injunction filed by appellants. But in granting the appellee, J. M. Berry, specific performance of the contract sued on in the original suit said decree is erroneous, and must be reversed and set aside, and this court will enter such decree as the said Circuit Court ought to have entered.

REVERSED IN PART AND AFFIRMED IN PART.