## Staunton.

CLINCHFIELD COAL COMPANY v. CLINTWOOD COAL AND TIM-
BER COMPANY.

September 10, 1908.

Absent, Keith, P.

1. SPECIFIC PERFORMANCE—*Laches—Risk of Injustice—Case in Judg-
ment.*—The bills in this case seek the specific enforcement of a com-
promise made nearly a quarter of a century ago, but fail to state
facts and circumstances sufficient to constitute a good excuse for the
unreasonable delay in seeking the relief asked.  Furthermore, the
bills state facts and circumstances which show upon their face that
a court of equity would encounter great risk of doing injustice to
the defendants and others if it enforced the compromise, and the
grounds entitling the complainant to the relief sought are not set
forth with the full, clear, positive and distinct averments necessary
in such cases.  Under such circumstances a demurrer to the bills
was properly sustained, and relief refused.

Appeal from a decree of the Circuit Court of Dickenson
county.  Decree for defendants.  Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. Norment Powell, Bullitt & Kelly* and *W. H. Rouse,* for
the appellant.

*Ayers & Fulton, Vicars & Peery, A. A. Skeen,* and *S. H.
Sutherland,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The bill filed by appellant and twice amended seeks specific
enforcement of a certain written agreement, known as the
Imboden compromise, bearing date February 19, 1883, and

entered into by F. M. Imboden, agent of Dale Carter's heirs, and Mrs. Mary Campbell, of the one part, and William Sutherland and others, of the other part; and, by specific enforcement of said compromise agreement, to extract from appellees and vest in appellant the title to the coal and other minerals in, under, and upon a certain tract of land situated in Dickenson county, Virginia, spoken of in the record as the "Sutherland tract."

It appears from the averments of the original and amended bills, that there was in 1876, and several years prior, an ejectment suit brought in the name of Dale Carter against William Sutherland and others, pending in the Circuit Court of Buchanan county, the object of which was to dispossess the defendants of certain portions of a large body of land, spoken of as the "French land," including within its area the said "Sutherland tract;" that in 1876 Dale Carter departed this life intestate, and said ejectment suit was thereafter revived in the names of his children as his heirs at law, but several years later the papers in said suit were burned when the court house of Buchanan county was destroyed by fire, and were never supplied by the Carter heirs; that, learning that the defendants were anxious to compromise and settle said suit, the Carter heirs and Mrs. Mary Campbell, who was the widow of James' Campbell, deceased, and had by his will acquired an interest in said "French lands," employed F. M. Imboden as their agent and gave him full power to compromise and settle the said litigation; that thereupon Imboden, after personal interviews with said defendants separately, called a meeting of all of them, and the aforesaid "Imboden compromise" was entered into, the same reduced to writing and signed by Imboden as agent for the Dale Carter heirs, William H. Burns, attorney for Mary Campbell, Joseph Kelly, and twelve others, including William Sutherland.

The intent and import of that compromise, so far as pertinent to the issues here, was to bind the Dale Carter heirs and

Mrs. Mary Campbell not to supply the destroyed papers in the ejectment suit, to pay all costs of that suit, and to release to the said defendants any and all claim of the Carter heirs and Mrs. Campbell to the surface of the land claimed and occupied by the defendants, respectively, the surface of said lands to be conveyed by the Carter heirs, their respective wives and husbands, and Mrs. Campbell, by deeds with covenants of special warranty, etc., to the defendants; and these defendants, together with their wives, were "to convey or cause to be conveyed by deeds with covenants of special warranty, in fee-simple, all the minerals on their respective tracts of land, owned by them at the institution of said action  *  *  *  to the heirs of the said Dale Carter, deceased, their assigns or vendees, except there is a clause to be inserted in each of the said deeds, reserving to the grantors, their assigns or vendees, the right to use and consume all the stone and cannel coal necessary for home consumption, and that there is also to be inserted a clause in each of the said deeds making said heirs of the said Dale Carter, deceased, their assignees or vendees, responsible to the said grantors in said deed, or their assignees, for any damage actually done to the said lands by reason of the mining of the said minerals."

It further appears from the original and amended bills, that nothing was done pursuant to the Imboden compromise, except the payment of the costs of the ejectment suit by the heirs of Dale Carter, deceased, and Mrs. Campbell, between the date of the so-called compromise and the year 1888, when a number of the parties thereto, including William Sutherland, instituted a suit in equity against the Dale Carter heirs; the devisees of Mrs. Mary Campbell, who had in the meantime died testate; and the Virginia, Tennessee & Carolina Steel & Iron Co., who claimed an interest in the said lands under a contract of sale from the Campbell devisees and the Dale Carter heirs; the object of which suit was to have the Imboden compromise declared null and void, and to have the same set aside and canceled.

To this suit the defendants appeared and filed answers, controverting the allegations of the bill. Depositions were taken and other proceedings had. While these proceedings were being taken, the cause was transferred to the Circuit Court of Wise county, and to several other counties, and finally to the Circuit Court of Washington county, where it was pending in 1896.

Some time prior to 1896, to-wit: in 1894, the complainants in that suit, including William Sutherland, made a compromise with the defendants thereto, by the terms of which the suit was to be dismissed at the costs of the defendants. The complainants were, respectively, to convey to the Virginia, Tennessee & Carolina Steel & Iron Co. the minerals in, on, and under their respective tracts of land involved in the suit, and the Virginia, Tennessee & Carolina Steel & Iron Co. was to convey the land, excepting the minerals underlying it, to the complainants, respectively; and thereafter (some time in 1896) this suit was dismissed and the defendants paid the costs thereof.

By deed of July 5, 1894, William Sutherland, pursuant to the agreement entered into some time in 1894, it is claimed, conveyed to the Virginia, Tennessee & Carolina Steel & Iron Co. all the coal and other minerals in, on, and under the Sutherland tract of land, reserving and excepting to himself, his heirs, etc., certain stone and so much cannel coal on the land as might be necessary for home consumption; and the Virginia, Tennessee & Carolina Steel & Iron Co. likewise executed and delivered to a number of the defendants in the last-named suit deeds by which it conveyed to them the lands they claimed, respectively, except the coal and other minerals thereon, which these defendants were, respectively, to convey to the Virginia, Tennessee & Carolina Steel & Iron Co.; these minerals to be conveyed to the said company instead of to the heirs of Dale Carter and devisees of Mrs. Mary Campbell, it being claimed by the Steel & Iron Company that it had obtained deeds from the Campbell devisees for their interest in the lands, and to have purchased from the Carter heirs their interest therein; but there was then existing a dispute between the company and

the Carter heirs with reference to this alleged purchase, and for that reason no deeds had been made by the Carter heirs to the company, although the Carter heirs made no objection to the minerals in, on, and under the lands being conveyed by William Sutherland and others to the company.

The original bill in the cause before us states that at the time the Virginia, Tennessee & Carolina Steel & Iron Co. accepted the deed from William Sutherland it knew that he had in 1887 conveyed the land to Jasper Sutherland, and that the interest of Jasper Sutherland in the land had, in a certain suit brought in the Circuit Court of Dickenson county to subject Jasper's interest to the claim of certain of his creditors, been sold to William B. Sutherland. Therefore, it had endeavored to get a release deed from Jasper and William B. Sutherland, but they, Jasper and William B. Sutherland, claimed that as they had not signed the Imboden compromise there was no need for them to sign such a deed, and refused to do so. But, say the complainants, the company understood, and such was the fact, that Jasper and William B. Sutherland recognized the validity of the Imboden compromise and the right of their father, William Sutherland, to make the same, and likewise the compromise of the suit pending in 1894, and further understood that Jasper and William B. Sutherland were not then claiming, and had never claimed, the minerals on the land (Sutherland tract); therefore, the signing of said release deed by Jasper and William B. Sutherland was not insisted on, etc.; that it was never known by the Virginia, Tennessee & Carolina Steel & Iron Co. or its assigns that Jasper and William B. Sutherland were setting up claims to the minerals on the lands until the year 1902, at which time, viz.: on May 16, 1902, William B. Sutherland granted and conveyed the coal and other minerals in, on, and under the lands in question to the Clintwood Coal & Timber Company.

It is further stated in the original bill, that the Virginia, Tennessee & Carolina Steel & Iron Co. became insolvent, and suit was instituted against it in the circuit court of the

United States for the western district of Virginia, by the Central Trust Company of New York, in which suit the "French lands," including the Sutherland tract, were sold and conveyed to the Interstate Coal & Iron Company; that on the 23rd day of May, 1905, the Interstate, &c., Co. sold and conveyed these lands to the complainant (appellant here); and that complainant has also recently purchased and obtained from the Carter heirs and others deeds for all the right, title and interest of the Carter heirs in and to the said lands, including the Sutherland tract.

It is further stated, that at the date of the Imboden compromise, William Sutherland was claiming the Sutherland tract, and it was not known to F. M. Imboden or Mary Campbell, or the heirs of Dale Carter, that any of his (William Sutherland's) children claimed an interest therein; that after the Interstate Coal & Iron Co. discovered on record the deed from Wm. B. Sutherland to the minerals in question, and then, or shortly thereafter, for the first time learned that it was claimed by Jasper Sutherland that William Sutherland (Jasper's father) had, prior to the year 1883, given or agreed to give the Sutherland tract to him (Jasper) and his brother, E. T. Sutherland, and that E. T. Sutherland had sold his interest in the land to him (Jasper), and that William Sutherland had executed to Jasper a deed for the land in 1887, and that they were then claiming that that deed passed to Jasper the minerals in, on, and under the lands it conveyed, as well as the surface thereof. The bill then asserts that the claim of the Sutherlands and the Clintwood Coal & Timber Co. is unfounded in fact or law, and calls in question the facts upon which the claim is rested, alleging bad faith on the part of the Sutherlands in not intimating to Imboden, or to the parties whom he was representing, that they, or either of them, objected to the Imboden compromise, or denied the right of William Sutherland to make the same; that E. T. Sutherland understood the contrary to be the facts, admitting the right of his

father to make the Imboden compromise, and that when he (E. T. Sutherland) made sale of his interest in the Sutherland land to his brother, Jasper, between the years 1883 and 1887, he did not sell to Jasper the coal and other minerals in, on, and under the land, but only the surface, etc.; that in making the deed to Jasper, his son, in 1887, and likewise in 1888 when making another deed to correct errors in the first-named deed, William Sutherland did not intend to convey the coal and other minerals in, on, and under the lands, but only the surface and timber thereon.

It is then charged in the original bill, that if it were true that William Sutherland did, prior to the Imboden compromise, give or agree to give to his sons, Jasper and E. T. Sutherland, the Sutherland tract of land, then, in making the Imboden compromise, William Sutherland acted for and was the agent of Jasper and E. T. Sutherland, and they were bound by what their father and agent did, etc.

Referring again to the suit instituted in 1888, the bill charges, that when Jasper Sutherland signed the power of attorney to one Stratton, authorizing the institution of that suit to annul the Imboden compromise, assisted in its prosecution and agreed to its dismissal pursuant to an agreement between the parties interested therein, the final decree therein precludes, in effect, the right of Jasper to call in question the validity and binding effect upon him of the Imboden compromise; that William B. Sutherland's purchase of the Sutherland tract of land, in the suit instituted by the creditors of Jasper Sutherland, was but a sham, as the purchase was really for the benefit of Jasper, who got the full benefit thereof; therefore, William B. Sutherland and also the Clintwood Coal & Timber Co. had both actual and constructive notice of the Imboden compromise, and were as much bound by that compromise and the proceedings in the suit to annul it as Jasper Sutherland.

The bill further alleges that the Clintwood Coal & Timber Co., or its predecessors in title, or Jasper Sutherland, were

never in the possession of the minerals in, on, and under the Sutherland tract of land, as the Imboden compromise worked a severance of the minerals in, on, and under the land from its surface; that as the complainant has a complete title of the heirs of Dale Carter and also of Mary Campbell's devisees in and to the Sutherland tract of land, and offers to convey the land, *i. e.*, the surface thereof, to William Sutherland or his assigns or vendees, as their rights may appear, reserving unto itself the coal and other minerals in, on, and under the land, as provided in the Imboden compromise, it, the complainant, has the right to specific enforcement of that compromise, whereby the complainant may obtain from appellee, the Clintwood Coal & Timber Co., a conveyance of the coal and other minerals in, on, and under the land, reserving in favor of Wm. B. Sutherland, his assignees and vendees, the right reserved to him and them under said compromise, and inserting also in the conveyance a clause to the effect that complainant, its assignees and vendees, shall be responsible to William Sutherland and his assigns for any damage actually done to the land by reason of the mining of said minerals, for costs, etc.

We have set out, perhaps at greater length than was necessary, the facts and circumstances under which the complainant acquired the right it asserts to a specific performance of the Imboden compromise, made and entered into nearly a quarter of a century before the institution of this suit, that the grounds of the demurrer to the original bill and as amended, relied on by the defendants, may be the better understood.

As mentioned, the bill was twice amended. In each of the amended bills the allegations of the original bill are repeated and the effort made to overcome the force and effect of some of the fourteen grounds of demurrer to the original bill; but the circuit court on the demurrer to the original bill and as it stood after each amendment thereto, sustained the demurrer and dismissed the bill with costs to the defendants; and this

ruling of the circuit court is assigned as error in the petition to this court for an appeal.

We do not deem it at all necessary to discuss *seriatim* the grounds of demurrer to the bill as it originally stood or as amended. It will be observed that the appellant is claiming as the successor in title to the rights of the heirs of Dale Carter, deceased, and the devisees of Mary Campbell, deceased, the right to a specific performance on the part of William Sutherland, his assigns and vendees, of that part of the Imboden compromise which provided that certain parties signing the compromise agreement, including William Sutherland, were, together with their wives, to convey to the heirs of Dale Carter, deceased, their assigns or vendees, all the minerals on their respective tracts of land, reserving certain rights as to stone, coal, etc., for home consumption; the Dale Carter heirs, their wives and husbands, and the devisees of Mary Campbell to convey in turn to the grantors in the first-named deed, their assignees or vendees, the surface of the lands and appurtenances, except the minerals in, on, and under the lands other than enough for the grantors' home consumption, etc. Nothing whatever is alleged to have been done under the Imboden compromise by the Carters and Campbells, except the payment of some costs, until the year 1894, when they paid another small bill of costs, and from 1883 to 1888 no excuse existed, so far as is alleged, for the failure to tender the conveyances of the Carters and the Campbells, as stipulated for in the Imboden compromise. On the other hand, it is admitted, that William Sutherland, in 1887, made and delivered to his son, Jasper, a deed conveying to him the Sutherland tract of land, without any exception or reservation whatsoever, and that not only was this deed duly recorded, whereby the Carters, the Campbells and all others concerned had constructive notice of its making and import, but that they and the Virginia, Tennessee & Carolina Steel & Iron Co. had actual notice when they made an ineffectual effort to get Jasper Sutherland and William B.

Sutherland to execute to them a release of the underlying minerals.

The bill states that from 1888 to 1896 a suit to rescind the Imboden compromise was pending, but as the record in that suit is not exhibited we are left to conjecture the grounds on which the rescission was asked, since the bill here merely states that the allegations of the bill in the rescission suit were controverted, and gives no reason why the defendants did not then insist upon a specific enforcement of the contract sought to be rescinded. It was not until the amended bills were filed in this cause that appellant alleged that Dale Carter and Mrs. Campbell and their respective heirs and devisees were ready, able and willing to carry out the Imboden compromise; and this allegation is made in the face of an admission in the original bill that in 1894 there existed a dispute between the Carter heirs and the Steel & Iron Co. as to the terms of the purchase claimed to have been made by the latter of the former's interests in the Sutherland tract of land, whereby the Carter heirs were in no condition, even if they were willing, to carry out the Imboden compromise. As already stated, the Virginia, Tennessee & Carolina Steel & Iron Co. became insolvent, and the Sutherland land was sold under decree of the United States district court, and conveyed to the Interstate Coal & Iron Co., and by conveyance of date May 23, 1905, appellant acquired from the Interstate Coal & Iron Co. the title it had to this land; and, according to the bill, the interest of the Carter heirs and others in these lands were acquired by appellant but a short while before the institution of this suit, without any reservation of surface or anything else in favor of William Sutherland, or anyone else, provided for in the Imboden compromise.

True, the amended bills allege that appellant and its predecessors in title took these conveyances subject to that compromise, and agreed to carry it out; but no such stipulations are alleged to have been inserted in the conveyances, and no binding written agreements to that effect are exhibited; and

had this been the case, that appellant acquired title to the minerals in and under the Sutherland land (which is here asserted) subject to the condition that appellant would carry out the Imboden compromise, is flatly contradicted, so far as the Interstate Coal & Timber Co., under whom appellant claims, is concerned, by the admission that it brought an ejectment suit in 1902 against appellee, Clintwood Coal and Timber Co., and others, to recover the land, thereby claiming the surface and the underlying minerals therein as well as the growing timber thereon.

The ejectment suit referred to was finally determined in this court, *Interstate Co. v. Clintwood Co.,* 105 Va. 574, 54 S. E. 593, and it was there held that the circuit court did not err in refusing to admit in evidence the Imboden compromise, for the reason that this compromise agreement was never carried into execution, but was disregarded and ignored by the parties in interest in their dealings with the Sutherland tract of land. No clearer justification of that view can be found than in the dealings of appellant and those under whom it claims, with respect to the Sutherland land, the subject of controversy here as in the ejectment suit.

These parties seem to have played the role of "fast and loose" with respect to the Imboden compromise, invoking its aid when deemed needful, and ignoring it when not adapted to their purposes. As fairly and well argued for appellees, after nearly a quarter of a century's delay, appellant comes into a court of equity to have enforced the Imboden compromise, that it (appellant) may acquire the minerals underlying the Sutherland land, relying mainly upon an agreement alleged to have been entered into by William Sutherland in 1894, with full knowledge on the part of appellant's predecessor in title that he had no sort of interest in the land, having years before conveyed the same to his son Jasper, the bill asking such relief should show a right thereto clearly and unmistakably. Not only this long delay, but the effort to enforce for any purpose the stale and often ignored,

if not repudiated, Imboden compromise by the parties in interest, comes not until an unsuccessful attempt is made to recover the whole land of appellees, and then with a bill, though several times amended, full of bare allegations unsupported by any written documents exhibited therewith. A mere assertion by a complainant in such a case, that he and those under whom he claims the right to have the contract specifically enforced were at all times ready, able and willing to carry out the contract on their part, will not suffice when the admitted facts on the face of the bill, as in this case, refute the assertion.

The contention of appellant, that the doctrine of laches has no application to the case, because appellees have remained in possession of the Sutherland land since 1883, is without force, since the possession was not pursuant to the Imboden compromise. That contract was, at most, but a purely executory agreement of compromise, which if not carried out left the parties as before. In the ejectment suit (105 Va., p. 574, 54 S. E. 593, *supra*), it was determined that the possession of Jasper Sutherland of the land in question was not under the alleged Imboden compromise, but in hostility to it.

In Barton's Ch. Pr. (2nd ed.), Vol. 1, p. 128, referring to the class of cases to which the one in judgment plainly belongs, it is said: "Owing to the general rule, that the specific performance of a contract will not be enforced in equity, unless the party seeking it has not been in default, but, on the other hand, has shown himself to have been ready, eager, prompt and desirous of maintaining his right, the rule of laches is more strictly applied in cases of this character than in other suits for accounts, etc.; and hence, although in some instances a long delay has been insufficient to bar the complainant's rights, yet in others a very short time has sufficed for that purpose."

The same learned author says: "Cases of this character, except in special instances, are governed by the general rule applicable to laches; but where the suit is to enforce specific performance of a contract to convey lands, courts of equity often allow and adopt the statutes fixing a limit of real actions."

"As the application for a specific performance is addressed to the sound discretion of the court, he who asks it must have shown himself prompt and willing to comply with the obligations of the contract on his part; and the prayer will not be granted if it would be inequitable towards the party against whom the prayer is made." *Bowles* v. *Woodson,* 6 Gratt. 78; 2 Minor's Inst. 895.

The same doctrine enunciated in the authorities just cited is re-affirmed in *Powell* v. *Berry,* 91 Va. 568, 22 S. E. 365, where it is emphasized, that if a party seeking specific performance or rescission of a contract has been in default, a court of equity will leave him to such remedy as he may have in a court of law.

Fry on Spec. Perf. (3d Am. ed.), in note on p. 453, citing an extensive list of cases, says: "It is well settled that where a party asks the specific performance of a contract, he must show, either that he has performed, or has offered and is willing to perform all that his contract can at any time call for," etc.

The original and the first amended bill in this cause put the appellant on inconsistent grounds, in that it first attempts to show that it is entitled to specific performance of the Imboden compromise by alleging that Dale Carter's heirs were always able, anxious and willing to convey the surface of the land in question to William Sutherland, his assigns or vendees, and that the Interstate Coal & Iron Co., as well as appellant, took title to the land subject to the Imboden compromise and agreed to carry it out; but when it comes to make excuses for the long delay in seeking enforcement of that agreement appellant accounts for four years of the delay by reference to the ejectment suit brought in 1902 and determined adversely to the plaintiff and in favor of Jasper Sutherland on his defense of adverse possession of the land for the statutory period of limitation, in 1906; and in the absence from this record of the record in the ejectment case (under the rule that pleadings are to be construed most strongly against the pleader) it is to be presumed

that the declaration in that case asserted a right to the whole land, and not for the underlying minerals alone, thereby abandoning the Imboden compromise, if not absolutely repudiating it.

The bill as first amended was bad on demurrer, and the second amended bill does not help the appellant out of the difficulties confronting it by reason of the admissions in the original and first amended bill, for this second amended bill not only repeats the admissions of the first two bills and refers to the four years' effort to eject the appellees from the whole land, but concedes that there never was at any time any deed tendered to William Sutherland, or to anyone claiming under him, for the surface of the Sutherland land, in execution of the Imboden compromise. In fact, the bill, as twice amended, not only fails to allege that appellant or any of its predecessors in title ever at any time offered to carry out the Imboden compromise by a conveyance of the surface of the land to William Sutherland or his assigns, pursuant to that agreement, but fails to state facts and circumstances sufficient to constitute a good excuse for the unreasonable delay in seeking the relief here asked. It was incumbent upon appellant to give sufficient reasons why this suit was not brought at an earlier period, stating specifically what were the impediments, if any, to an earlier prosecution of it; but instead it relies mainly, as it would seem, upon the bare statement, that appellant and its predecessors in title did not know until the termination of the ejectment suit, instituted in 1902 and terminated in 1906 just before the institution of this suit, that the proper forum in which to assert and maintain their claim was in a court of equity. The allegation in the second amended bill, that the Virginia, Tennessee & Carolina Steel & Iron Co. was always able, ready and willing to carry out the terms of the Imboden compromise concerning the surface of the Sutherland tract of land, is directly refuted by the admission in the original bill that that company was insolvent and for some time tied up in the United

States court, with its affairs in the hands of a receiver. Not only does the bill, with its amendments, make the admissions to which we have adverted and others, but states facts and circumstances which show upon their face that a court of equity would encounter great risk of doing gross injustice to the parties against whom relief is asked by the enforcement of the Imboden compromise, and doubtless to others.

Facts and circumstances entitling appellant to the relief prayed for are not averred by full, clear, positive and distinct statements, as the rule in such cases requires; therefore, it would be plainly inequitable to grant the relief. *Eubank* v. *Barnes,* 93 Va. 153, 24 S. E. 908; *Bowles* v. *Woodson, supra; Powell* v. *Berry, supra;* Waterman on Spec. Perf., sec. 438; Fry on Spec. Perf. (3d Am. ed.), secs. 1070-1-2; 12 Am. & Eng. Enc. Pl. & Pr., 834-5; 20 Id. 449.

We are of opinion that there is no error in the rulings of the circuit court sustaining the demurrers to the original and amended bills, and dismissing the cause. Therefore, the decree appealed from is affirmed.

*Affirmed.*