## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

### HURT AND OTHERS V. MILLER AND OTHERS.

#### JULY 15, 1897.

1. CHANCERY PLEADING—*Real Parties—Suit by Assignor for Benefit of Assignee—Effect of Cross-bill.*—The assignor of a chose in action, though secured by a vendor's lien ·on real estate, cannot sue in equity for the benefit his assignee to enforce the lien. Equity deals only with the real parties in interest. But where, in such a suit, the beneficial owner is made a party by cross-bill of the defendants, and answers the same, the original bill should not be dismissed, but proceed to final decree.

2. FRAUD—*Repudiation of Contract—Rescission—Promptness.*—A party intending to repudiate a contract on the ground of fraud must do so as soon as the fraud is discovered. He has his election then to affirm or rescind the contract, and this election may be shown as well by acts as by words. When once made it cannot be retracted. The defrauded party will be deemed to have waived his right of repudiation, if, after discovery of the fraud, he treats the contract as still subsisting, or if, in consequence of delay, an innocent third party has acquired an interest in the property, or the rights of the wrong-doer will be so affected that he cannot be placed in his former position. If the fraud complained of be false representations in the sale of real estate, the purchaser should promptly, on discovery of the fraud, notify the vendor of the cause of complaint, and offer to restore the title and possession of the property sold. It is too late to wait until sued for the purchase price, when the fraud was discovered long before that time, and the vendee has remained in possession without demanding a rescission. The vendee should act with promptness in discovering the fraud, and in·repudiating his contract, when discovered.

Appeal from a decree of the Circuit Court of Russell county, pronounced March 9, 1896, in a suit in chancery, wherein the

appellee was the complainant, and the appellants were the defendants.

*Affirmed.*

The opinion states the case.

*E. M. Fulton* and *J. H. Fulton,* for the appellants.

*R. T. Irvine, E. S. Finney, Alderson, Miller & Bolen,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

On the 19th day of September, 1890, W. T. Miller sold to J. L. Hurt and Joel T. Adams, a certain lot of land designated as lot No. 1, Block 9, in the plan of the town of St. Paul, Wise county, Va., at the price of $1,000. Five hundred dollars of the purchase price was paid in cash, a note given for the balance, payable to Miller twelve months after its date, with interest, and Miller conveyed the lot to them by deed, with general warranty of title, reserving a vendor's lien thereon to secure the payment of the note. The note not having been paid, though nearly a year past due, and Miller having assigned it to the Bank of Graham, he instituted this suit in the Circuit Court of Wise county, in August, 1892, for the benefit of the Bank of Graham, to collect the amount due on the note, by the enforcement of the vendor's lien reserved on the lot. At the second rules taken in the office of the clerk of the court on the third Monday in February, 1893, the defendants Hurt and Adams filed a demurrer and joint answer to the bill, and asked that their answer be treated as a cross bill, and that Miller and the bank be required to answer under oath.

In their cross bill Hurt and Adams ask for a rescission of their contract with Miller; that their note executed to Miller be decreed null and void and surrendered to them, and that a decree be made against Miller in their favor for the $500 cash

payment for the lot made to him, with interest thereon from September 19, 1890, till paid, etc. They allege that while it is true they purchased the lot from Miller, paid him the cash payment therefor, and executed their note for the deferred payment, and accepted from Miller the deed of conveyance to them, reserving a vendor's lien on the lot to secure the payment of the note, they were induced to enter into this contract by his false representations made before the consummation of the sale; that they, respondents, were at St. Paul on the 19th day of September, 1890, twenty-four miles distant from the records of Wise county, and therefore relied exclusively upon the representations of Miller concerning the title to the lot; respondent, Hurt, having known Miller favorably for many years, and having the utmost confidence in his honesty and integrity, which confidence was well known by respondent Adams; that before the sale was closed, respondents were assured by Miller that the title to the lot was perfectly good in all respects, which respondents, at that time, did not have the least doubt was true, and without which assurance they would not have entered into the contract for the purchase of the lot, &c. Respondents then allege that the title to the lot is not good, but is encumbered for a sum much larger than their note sued on, and when, if ever, this encumbrance would be removed, respondents do not know. They further allege that the lot in question is a part of a tract containing about 300 acres, at St. Paul, which formerly belonged to the children of William Fields; that William Fields, their guardian, filed a bill in the Circuit Court of Wise county against his wards and others, to sell the whole tract of land, and a decree was entered in that suit appointing one J. C. Gent a commissioner to make the sale; that the commissioner did, on May 29, 1889, sell the land as a whole to one F. A. Stratton at the price of $25,000; that Gent, commissioner, conveyed the land to Stratton, reserving a lien for the deferred payments amounting to about $20,000, which deed is recorded in the clerk's office of Wise County Court; that this lien was on the tract of land, of

which the lot purchased by respondents was formerly a part, when they made their purchase, notwithstanding the representations made by Miller that the land was free from encumbrances, and the title otherwise good; and that there was yet due on this lien held by Gent, commissioner, the sum of $5,004.00, with interest thereon, from May 28, 1889.

To the cross bill Miller filed a very full answer under oath, which is adopted by the Bank of Graham as its answer, in which he denies that Hurt and Adams, or either of them, were induced to enter into the purchase of the lot, to make the cash payment therefor, or execute the bond sued on, or to accept the deed of conveyance for the lot, by any false representations made by him; that he does not remember that either Hurt or Adams asked him anything about the title to the lot, and therefore cannot remember what assurances, if any, he made them with reference thereto, but that at the time he thought the title to the lot good, and still thought so, and if he was, in fact, asked about the title by Hurt, he doubtless represented to him before the sale that the title was good, though he thinks it quite likely that, if he was asked about it at all, he told the exact status of the title, &c. His (Miller's) answer then sets out that after the sale by Gent, commissioner, to Stratton, and by subsequent conveyances by Stratton and others to whom he had conveyed certain interests in the land, one, John B. Moon, became the purchaser of the whole tract of land, except twenty-seven lots reserved, (among which is the lot in question), at the price of $60,500, and proceeded to have it laid off into streets, avenues, alleys, parks, boulevards, and city lots, the site of the town of St. Paul being thereon, and had most of the streets graded at an expense of not less than $20,000, and was having a public sale of the lots on the day that respondent sold his lot to Hurt and Adams; that the balance of the purchase money due to Gent, commissioner, secured on the whole tract of land, amounted to only about $2,500.00; that the lot in question was one of the first sold of the twenty-seven lots reserved in the deed to Moon, and there-

fore would be one of the very last lots liable for the balance
due on the whole tract, of which it was formerly a part.   Re-
spondent further says that in addition to the land first liable for
the balance of the purchase money due to Gent, commissioner,
which was then going to W. B. Fields, William Fields, and the
latter as guardian for his daughter Kate Fields, in equal shares,
there are a number of solvent persons liable for this balance who
would be called upon to pay it before the lot in question could
be subjected, and that therefore the vendor's lien on this entire
tract of land securing the balance of the purchase money therefor
remaining unpaid, "does not even create a fog or a mist over the
title to the lot in question"; and he also exhibits with his answer
a release from W. B. Fields, William Fields, the adult parties
interested in this balance of purchase money of their interest in
this lot sold to Hurt and Adams, and also a release from William
Fields as guardian for his daughter, Kate Fields, of any claim
that his ward had therein.

The cause having been removed to the Circuit Court of Rus-
sell county, it came on to be heard by that court on the 15th day
of August, 1894, upon the bill of complaint filed by Miller for
the benefit of the Bank of Graham, the answer and cross-bill
of the respondents Hurt and Adams, the answer of Miller and
the Bank of Graham to the cross-bill, the depositions of witnesses
examined on behalf of the complainants in the cross-bill, the
exhibits with the original and cross-bills, an agreement by Gent,
commissioner, then filed to release the lot in question from any
claim he had thereon for the balance of the purchase money,
and an agreement between the parties showing that the balance
due Gent, commissioner, was then only $1,615.89.   Whereupon
the court held that no sufficient cause was shown for rescinding
and setting aside the contract in the bill·and proceedings men-
tioned, but that the encumbrance on the lot in question should
be removed before the plaintiff, Miller, for the benefit of the
Bank of Graham, should have a decree for the $500.00 secured
by the vendor's lien on the lot, and continued the cause to give
the plaintiff further time to remove the encumbrance.

At a subsequent term a rule was awarded against the plaintiffs (Miller and the Bank) to show cause why they had not removed the encumbrance on the lot, and if the same could not be perfected, why the contract of sale to Hurt and Adams should not be rescinded. To the rule Miller answered at the November term, 1895, that it had been out of his power to have the lien released, so far as Kate Fields was concerned, as she was then not 21 years of age, but would be in the following month, December, and had promised to release any claim she had on the lot as soon as she attained her majority. Thereupon the cause was continued to the March term, 1896, to await the release from Kate Fields upon her arrival at the age of 21 years. At the March term, 1896, the release from Kate Fields having been procured and filed in the cause, it was decreed that the plaintiffs recover of the defendants, Hurt and Adams, the sum of $500, with interest thereon from September 19, 1890, till paid, and the costs of this suit, except the costs accrued subsequent to August 15, 1894, which should be paid by the plaintiffs; and that, unless the defendants or one of them paid or satisfied the decree within thirty days from its date, a commissioner appointed by the court for the purpose, should sell the lot in the bill and proceedings mentioned, &c. From this decree, as well as the decree entered prior thereto, the defendants, Hurt and Adams, obtained an appeal to this court.

It is a well-settled rule that an assignor of a chose in action, though secured by a vendor's lien reserved on real estate, cannot sue in equity for the benefit of his assignee to collect the debt. The reason for the rule is that equity deals only with the real parties in interest, and if they are not before the court no proper decree can be made in the cause. *Penn.* v. *Hearon,* 94 Va. 773, and authorities there cited.

The Bank of Graham having been made a party to this suit, however, by the cross-bill of the respondents, Hurt and Adams, and having filed its answer thereto, it was proper that the court below should not sustain the demurrer to the bill filed by Miller, for the benefit of the Bank of Graham.

Whether a vendee of land, in the possession thereof, not alleging the insolvency of his vendor, undisturbed by any suit begun or threatened, and who has taken from his vendor a deed of general warranty without other covenants of title, is entitled to a rescission of his contract upon showing that his vendor made false representations to him concerning the title to the land before the sale was consummated, we need not express an opinion, for in the view we take of the case here, the question to be determined is: Though it were conceded that appellee, Miller, made misrepresentations to appellants concerning the title to the lot they purchased of him, have appellants shown that they acted with that promptness in ascertaining the falsity of the representations, and in making known to their vendor the cause of their complaint when discovered, and of their readiness to make restitution to him of the tide to and possession of the lot, which the law requires of one seeking the rescission of an executed contract for the sale of land?

Neither by their cross-bill, nor in their deposition given in the cause, do appellants state clearly when they first ascertained that the alleged statements of Miller concerning the title to the lots were false; nor do they claim, either in their cross-bill or depositions, that they informed Miller of their cause of complaint prior to the filing of their cross-bill in February, 1893, more than two years after the contract was made. True, Hurt says in his deposition given on August 14, 1893: "When at Wise Courthouse last winter I took Judge E. M. Fulton with me, to Judge W. T. Miller and repeated to him the assurances given as above stated in regard to the title, and he said to Judge Fulton: 'Yes, it is true I did tell Senator Hurt (referring to deponent) that the title to said lot was absolutely perfect,' and I thought so," yet he does not say that he even then, in the winter of 1892-'3, when his note sued on was more than a year past due, and this suit pending, offered to restore to Miller possession of the lot and title thereto. Appellants do not allege what efforts, if any, they made to ascertain the facts upon which they

rely to have a rescission of their contract, but, from the deposition given by appellant, Adams, the conclusion is irresistible that they ascertained but a short time after their purchase that the encumbrance securing Gent, commissioner, a balance of purchase money for the tract of land, of which their lot was formerly a part, was in existence. He says: "About the 18th of September, 1890, I went to St. Paul, in the county of Wise, in the state of Virginia, with a view of purchasing some real estate, upon which to erect a storehouse for the sale of goods. On or about the 19th of September, 1890, Mr. John L. Hurt (who for a number of years has been a silent partner of mine in the mercantile business in Pittsylvania county, Va.) came to St. Paul at my instance, and, after consultation, agreed to join me in business there again." He then corroborates what Hurt had testified to as to the representations made by Miller that the title to the lot they purchased was clear, and as to their being induced to purchase it upon those representations, &c., and adds: "It turned out afterwards that such was not the case, and we could not use the lot or dispose of it."

Now, when did appellants propose to erect a storehouse and begin business at St. Paul? Certainly not at some indefinite period in the future, but most assuredly with that promptness necessary to keep pace with the progress and sudden development of St. Paul, which, as the evidence shows, all then thought had a great future as a business centre. One railroad had been completed to the town, another was under construction, with every prospect of completion, and costly business houses, residences, &c., were going up upon the lots that had already been sold off from the tract of land upon which the town site was located. It may, therefore, be said that it was the purpose of appellants to erect a storehouse and begin business on the lot in St. Paul purchased of Miller September 19, 1890, at once, and, if it be true that they were deterred from doing so by discovering the alleged cloud upon the title to the lot, necessarily they were apprised of the alleged defect of title but a short while after

they made their purchase, and yet, by their own showing, they do not apprise Miller of their cause of complaint till after this suit is brought. Under the circumstances disclosed in the record as surrounding the parties to this contract, it was highly important to Miller to have prompt notice of the repudiation by appellants of the contract, if they so intended. Property at St. Paul was then on a "boom," and so continued for months after September 19, 1890. Under the conditions that surrounded the place, and the mania for speculation in town lots, which was then widespread in the land, the farm, of which, as we have seen, the lot purchased by appellants was a part, was resold in a brief time at an advance of nearly forty thousand dollars, exclusive of the twenty-seven choice lots reserved, and these lots had been sold, and some resold, at fabulous prices. It therefore behooved appellants to promptly notify Miller of their intention to repudiate their contract with him, and not wait till all chance of his reselling the lot for as much as he might have sold it, had they been prompt in restoring the title and possession to him, was gone. That payment had never been demanded of appellants prior to this suit, if true, is no answer to the charge that they have been guilty of such laches in repudiating their contract as takes away their right to have it rescinded. It seems clear from appellants' own showing that it would be impossible to put the parties back *in statue quo,* as they ask may be done; and, in view of the fact, abundantly shown, that appellants' apprehension as to the insufficiency of their title is altogether shadowy and unsubstantial, it would be manifestly unjust and inequitable to attempt it.

In the case of *Hudson* v. *Waugh,* 93 Va. 518, the false representations or mutual mistake alleged to have been made, were as to the amount due on an encumbrance assumed by the vendee of the property, and, although it was shown that the lots purchased were bound by an encumbrance of $4,181, instead of $2,796, and that the vendee waited only a few months after discovering the fraud or mistake before instituting his suit for rescission of the contract, this court held that he was not entitled

Opinion.

to a rescission; that he had not acted with that promptness in discovering the fraud or mistake, or in repudiating the contract after he made the discovery, that was required to entitle him to a rescisssion of his contract, he having delayed till the rents of the property were reduced from \$72.00 to \$43.00 per month.

A party who intends to repudiate a contract on the ground of fraud, should do so as soon as he discovers the fraud; for if, after discovery of the fraud, he treats the contract as a subsisting contract, or if, in the interval whilst he is deliberating, an innocent third party has acquired an interest in the property, or if, in consequence of his delay, the position even of the wrongdoer is affected, he will be deemed to have waived his right of repudiation. And whenever a party to a contract has a right to elect whether he will avoid it, or treat it as still subsisting, his election may be manifested by acts as well as by words, and, when once made, is final, and cannot be retracted. 2 Add. on Con., 772; Kerr on Frauds, 306. *Max Meadows L. & I. Co.* v. *Brady,* 92 Va. 71; *Powell* v. *Berry,* 91 Va. 568; *Morgan* v. *Glendy,* 92 Va. 86; *Darling* v. *Cumming,* 92 Va. 521; *Slothowe* v. *Oak Ridge L. Co.,* decided at the present term.

We have seen that appellants do not even claim to have notified their vendor of their intention to repudiate the contract sued on prior to the institution of this suit; that the only reason they give for not doing so is that no demand was made upon them for payment of their note; that they held title to the lot, and the possession thereof for more than two years without demanding a rescission, although they discovered the cause for which they ask a rescission long prior to the filing of their answer and cross-bill in this suit, and before the lot became totally unsalable, as they say. They must, therefore, be considered as having by their acts, after discovering their alleged cause of complaint, made an election to treat the contract as a subsisting contract, which election could not afterwards be retracted.

While in many cases decided by this court, among which are *Mays* v. *Swope,* 8 Gratt. 46; *Young* v. *McClung,* 9 Gratt. 336;

*Peers* v. *Barnett,* 12 Gratt. 410; and *Daniel* v. *Leitch,* 13 Gratt. 195, time has been allowed a vendor to perfect his title or remove an encumbrance, we are, under all the circumstances of the case, not disposed to disturb the provision in the decree of the March term 1896, requiring appellees to pay the costs accrued subsequent to August 15, 1894.

.We are of opinion that the decrees complained of should be affirmed.

*Affirmed.*