# CHARLESTON.

## MULLEN v. SEARLS.

Submitted June 14, 1911.     Decided November 21, 1911.

SALES—*Contract—Fraud—Action to Cancel—Burden of Proof.*
   One who seeks to cancel a contract of sale for fraud and duress must carry the burden of proof, and furnish clear and full proof of such fraud and duress. *(Deepwater* v. *Renick,* 59 W. Va. 343.) (pp. 790 to 795).

Appeal from Circuit Court, Cabell County.

Bill by W. C. Mullen against the E. A. Searls Company and others. Decree for plaintiffs and defendants E. A. Searls and Elliott Northcott appeal.

*Reversed, and Decree for Defendants.*

*Joseph P. Douglas,* and *Holt & Duncan,* for appellants.

*W. R. Thompson* and *George J. McComas,* for appellee.

BRANNON, JUDGE:

A corporation existing under the name of Searls & Mullen, later called the E. A. Searls Company, in the business of selling furniture. E. A. Searls, W. C. Mullen and Elliott Northcott and others held stock in it. After a time question arose as to the conduct of the business. It seemed to be in bad condition. Mullen was treasurer and book keeper. Searls and Northcott were dissatisfied with Mullen's action as treasurer and book keeper. Searls demanded that the books be gone over by himself and daughter and Mullen. This inspection was begun. It revealed that Mullen had drawn and appropriated from the corporate money about $4,000. This is not denied. The examination was not carried further. Disagreement between Searls and Mullen existed. Searls offered to sell his interest to Mullen or to give Mullen a certain sum for his interest. Mullen refused the offer of Searls. Searls brought a suit to settle and wind up the affairs of the company, or rather filed a bill in the clerks office. In the bill charges of conversion of corporate money were made against Mullen as treasurer. Shortly after the filing of this bill negotiations were carried on between Mullen and Searls and Northcott, which resulted in a sale and transfer by Mullen to Searls of the stock and interest of Mullen in the corporation. The suit was then dismissed. About four months thereafter Mullen sued Searls to cancel the transfer of stock from Mullen to Searls, charging that that transfer had been procured by fraud by Searls and Northcott and by duress. A great mass of evidence was taken, and a decree was rendered cancelling the said transfer, from which decree Searls and Northcott have appealed.

Take up first the charge of fraud. At the threshold of this case we must never forget a well known rule as a guiding star in it. To rescind for fraud proof of it must be very clear and full. *Whitaker* v. *Improvement Co.*, 34 W. Va. 217; *Greer* v. *O'Brien*, 36 *Id.* 277. It may be stated that the bill is likely not good in this respect, because it shows on its face that when Mullen made the transfer of stock to Searls he was in possession of the facts upon which he predicates the charge of fraud. He claimed in his bill that the charge of misappropriation of money was set up against him; that certain credits against such money in

fact existed fully equal to the sum so charged against him, but that the books showing such credits for advancements made by him had been taken by Searls and secreted so that he could not have access to them and show by the books and other papers that was not really in debt to the company. The bill states that when Searls and Mullen and Miss Searls went over the books the right hand pages of the book showing withdrawal of money by Mullen were examined and footed up, but that Searls broke off the examination and refused to inspect the left hand pages showing advancements made by Mullen. (Not plausible.) The bill showed that Mullen was treasurer and book keeper, and had therefore over any body else minute knowledge as to the .money transactions of the corporation. If he did not know all the details he knew the substantial facts as to his credits, and yet with this knowledge he made the transfer. So, the bill and the evidence show that Mullen acted with a full knowledge of the facts. Who better than he knew of his advancements or credits? He was book keeper and keeper of papers. He surely knew of his large items going to his credit, if any existed. Thus with the knowledge of the facts he made the sale and transfer. It will not do for him to say that he did not have means of showing his credits. He alleges that he gave Searls the key to the safe in which the books and papers were. Could he not call upon Searls in court to produce them if he had them? Could he make this compromise with his father in law Searls with knowledge of the facts and recant? I would not say that if Searls had secreted the books it would not be an element of fraud; but that fact is not proven. The evidence conflicts as to which one purloined the books, and the burden is on him who charges fraud to prove it. It is not proven that Searls secreted the books. I repeat that the bill and the .evidence show that when Mullen agreed to sell his stock to Searls and retire from the corporation, which was in complication and disagreement among its owners, he did so with full knowledge of the facts and can not set up this alleged fraud. Where a party makes a false representation to another, but that other has full knowledge of the facts, he can not rely upon the fraud. In 20 Cyc. 32 we find this law: "It is essential of course that the party to whom the representation is made should be ignorant of the matter represented. If before he acts he has knowledge of the truth and thus knows

that the statement is false, it cannot be said that he is deceived." If a false statement is made to allow the other party to rely upon it he must act in ignorance of its falsity. *Huston* v. *McNeer*, 40 W. Va. 365. The party must rely upon the statement and act on the faith of its truth. It is a fundamental principle that the false statement "must be believed by the party to whom it is addressed, otherwise however false, or however fraudulent the intent, the false statement does not constitute any grounds for rescission of a contract." *Pennybacker* v. *Laidley*, 33 W. Va. 624. Thus when Searls claimed that Mullen was indebted to the company a certain sum for money of the company converted to his own use, Mullen knew it to be false, if false it was; he had kept the books and papers and knew what they would reveal better than any other man. He knew the facts. He could not say that because the books were not obtainable just then he could surrender without further effort for the truth. He says he gave the key of the safe and store containing the books and papers to Searls. Thus he knew where they were. He is a business man competent to take care of himself, and we must say that he knew that he could demand those books, if they contained evidence for him, and that a court would compel their production in the suit brought by Searls against him for settlement of the business of the corporation. The law does not let a man make a contract, especially a compromise contract to close pending litigation, and then get out of it by saying that evidence existing in the hands of another party would vindicate his cause. He must defend himself. "If a person to whom false statements are made could, by such further investigation for himself as a prudent man would make, discover their falsity, he is negligent to some extent if he omits to investigate." Here in this case evidence known to Mullen was in existence and he knew of its substance. Page on Contracts, section 119. The same author tells us, section 117, that if the party alleging fraud disbelieves the statements, and knows that they are false he can not rescind; and further that "a false statement as to the condition of a business made to one who is familiar therewith can not be fraud." Several times before the suit brought to settle the business of the corporation Mullen indignantly rejected the price for his stock offered by Searls. This shows that he then knew his rights. But little later. After the suit to settle he ac-

cepted that price. It was that suit that caused the settlement. He concluded, for compromise and peace to accept the same sum. I repeat that the only ground upon which, with any color, Mullen rests his charge of fraud is that Searls secreted the books and papers; but that is not proven. It depends upon conflicting evidence with preponderant evidence against the charge. Mullen did not hastily make the sale. He says that after he had a copy of the bill of Searls for settlement of the affairs of the corporation, he took it to his counsel and sedately advised with that counsel, and pursuant to his advice made the sale and compromise. Thus as to fraud Mullins case fails.

As to duress. Mullen rests his case also upon the charge of duress. There was no warrant sworn out, there was no arrest; but it is claimed that Searls threatened criminal prosecution. It is only necessary to say that the burden to show such duress is upon Mullen, and his evidence utterly fails to do so. It rests only on his own evidence and his wife's, and is contradicted by Searls and Northcott and others confirmatory of them. On this duress matter the evidence decidedly preponderates against Mullen. The case shows that it was that suit brought by Searls to settle the corporation business that induced the compromise and sale. Mullen did not hastily make the sale. He says that he took a copy of the bill in that suit and notice of motion for a receiver to his counsel, and sedately advised with that counsel as to what he would do, and pursuant to his advice he made that sale. This counsel so states. . It was the civil suit that caused Mullen to accept the price which before he had refused. A civil suit is not legal duress. *Whitaker* v. *Improvement Co.,* 34 W. Va. 217. The authorities differ as to whether a threat of a prosecution is duress. *Claflin* v. *McDonnell,* 84 Amer. Dec. 54, says not. I would think that a threat of prosecution which would result in imprisonment would be duress. Page on Contracts, section 251. But there is no proof of duress. After threat, as Mullen says, he rejected Searls' offer to buy. Threat had not then influenced him.

If there was fraud, if there was duress, why did Mullen on the 18 January, 1909, sign a formal written contract by which he purchased from Searls and Northcott the entire corporate stock in the corporation with which he did not comply? Was this not

ratification of his sale? Was it not admission that there was no fraud or duress? This was a few days only before Mullens suit, when he must have known of any fraud or duress and had set intention to sue. Or if after the suit, that contract would tell still stronger against him. The writ does not give the day of the suit.

For these reasons we reverse the decree and dismiss the bill.

*Reversed, and Decree for Defendants.*