# CHARLESTON.

LLEWELLYN O. KNIPP *v.* GEORGE E. MYERS *et al.*

(No. 5183.)

Submitted February 3, 1925.   Decided February 10, 1925.

1. CANCELLATION OF INSTRUMENTS—*Party Suing to Cancel Notes Has Burden of Proof; Party Suing to Cancel Notes Must Establish Facts Sufficient to Justify Decree for Him by Clear and Explicit Evidence.*

The moving party in a suit brought to annul and cancel notes, has the burden of proof, and must establish the facts sufficient to justify a decree in his favor by clear and explicit evidence.   (p. 155). .

(Cancellation of Instruments, 9 C. J. §§ 188, 195, 196.)

2. CONTRACTS—*Party Rescinding for Breach by Other Party or for Fraud in Procurement Must Do So Speedily on Discovery of Breach or Fraud.*

Where a party to a contract intends to rescind it on account of a breach of it by the other, or on the ground of fraud in the procurement thereof, he must elect to do so speedily on the discovery of such breach or fraud.   (p. 156).

(Contracts, 13 C. J. §§ 671, 675.)

3. CANCELLATION OF INSTRUMENTS—*On Conflicting Evidence as to Delivery of Notes Placed in Escrow Cancellation Will Be Denied.   On Conflicting Evidence as to Delivery of Contract Placed in Escrow Specific Performance Will Be Denied.*

Where, upon a bill for rescission and cancellation of notes, and a cross-bill answer seeking specific performance of the contract, it appears that the contract and notes involved were placed in escrow, and the evidence in relation thereto is conflicting and doubtful as to whether said contract and notes have ever been delivered so as to become binding upon the parties, and the Court is unable to determine the rights of the parties, relief will be denied to either.   (p. 157).

(Cancellation of Instruments, 9 C. J. § 195.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Appeal from Circuit Court, Harrison County.

Suit by Llewellyn O. Knipp against George E. Myers and others, in which defendants filed cross bill.   Plaintiff's bill

was dismissed and decree rendered for defendants on their cross bill, and plaintiff appeals.

*Affirmed in part; reversed in part; cross bill answer dismissed.*

*Strother & McDonald,* for appellant.

*John B. Wyatt,* for appellees.

Woods, Judge:

The plaintiff seeks cancellation of a certain assignment of an interest in a coal lease, as well as the notes given as a consideration, on the grounds of fraud in the procurement thereof, and the failure of consideration therefor. To a proper understanding of the grounds which are relied upon for relief in this cause it becomes necessary to state the principal allegations of the plaintiff's bill containing those charges, and such parts of the answer of the defendant Myers as are responsive thereto.

Along about September, 1918, the plaintiff, desiring to purchase some coal land, obtained information that the defendant, George E. Myers, held a tract of about forty acres of coal under a lease or royalty contract, on what was known as the Perry Heflin farm, near Viropa, in Harrison County. He sent for Myers and after some negotiation agreed to pay him the sum of $22,500.00 for the lease that Myers had on the Heflin farm. The two interested parties went to attorney McDonald's office, in Clarksburg, for the purpose of having the necessary papers prepared for the transfer. Myers produced the contract of lease and it was found, according to Knipp, that it was only for an acre of coal under the Heflin farm. The attorney, who was acting for both parties, is said to have remarked upon looking at the lease, that it was not a recordable paper, and that it only called for the one acre of coal, whereupon the plaintiff contends that Myers said that he had a lease at his home in the town of Shinnston where he resided and that he had forgotten to bring it with him. The result, however, of this conference at the lawyer's office was that an instrument was prepared assigning to the plaintiff all the right, title and interest of Myers in the coal underlying the Perry Heflin farm. For the consideration $500.00

was cash in hand paid, and the plaintiff executed his fourteen promissory notes, bearing even date to said assignment, to-wit,. September 4, 1918; the first two of said notes each call-ing for $5,000.00 payable to the order of George E. Myers on or before the fifteenth day of September, 1918, and on or before the fifteenth day of October, 1918, respectively, 'and the remaining notes each calling for the sum of $1,000.00 and becoming due and payable in one, two, three, four, five, six, seven, eight, nine, ten, eleven and twelve months after the fifteenth day of October, 1918, respectively, with interest. The said tentative assignment and the notes, duly executed, were placed in the hands of the Clarksburg Trust Company in escrow. The condition of the escrow, as contended by the plaintiff, was that they be held until the title to said property of said defendant Myers could be ascertained and found to be good and marketable. Whereupon he, the plaintiff, was to execute a deed of trust on said coal lands so bought by him to secure the payment of said notes, and that upon the per-formance of these conditions by the defendant Myers and the plaintiff the tentative assignment was to be taken out of es-crow and delivered to the plaintiff, and the notes were to be delivered to the said Myers. The plaintiff further says that the lease exhibited at the attorney's office at the time the agreement was made was only for one acre. That the defend-ant Myers never produced the lease that he said he had at his home at Shinnston. The plaintiff, however, on the following day went upon the Heflin lease and purchased large amounts of machinery for mining purposes and proceeded to mine the coal. He claims that he was met by Heflin with the statement that Myers had no rights thereunder. He maintains that he endeavored from time to time to secure from Myers the good title that he claimed he had to the Heflin coal but failed. Knipp was put to the necessity of taking a lease himself from Heflin in order to protect his interests and keep his coal mine in operation. He paid the first $5,000.00 note at the time it was due. The plaintiff claimed that he relied upon the rep-resentations of Myers that he had good title, that these rep-resentations were later found to be false, and that he was induced thereby to execute the several notes hereinbefore set

out. He prays for a cancellation of the tentative assignment, and the several notes in escrow, and for general relief.

The defendant Myers tells a different story in what he denominates his cross-bill answer. He claims he was sought out by Knipp, who insisted on buying his interest in the Heflin·coal lease that he owned. He showed Knipp the lease which was for one acre, with an option on the balance of the Heflin farm, amounting to thirty or forty acres. This lease was exhibited to the attorney who acted for both parties in the trade. He told the plaintiff that he only had such interest in the Heflin coal as shown on the face of the lease exhibited, and from which the attorney prepared the tentative assignment of his interest, and notes which were lodged with the Clarksburg Trust Company. He denies that he represented to the plaintiff that he had another lease at his home in Shinnston. He claims that the trade was consummated in the attorney's office and the only reason that the assignment and the notes were placed in the hands of the Clarksburg Trust Company, was for his own benefit, in this that the plaintiff was to make a survey of the whole property of the Heflin's, and execute a deed of trust on the coal thereunder to secure him in the payment of his notes. Myers maintains that the lease he sold to Knipp, while for but one acre, contained provisions which were in effect an option on the remaining thirty acres of coal under the Perry Heflin farm, and that the plaintiff only had to operate it under such conditions as would automatically entitle him to another acre after he had mined the acre under lease—eventually extending to the entire farm. He denies having made any misrepresentation to Knipp concerning his interest in the coal on the Heflin farm. He avers that the plaintiff went on the Heflin farm under his lease, has mined the coal thereunder for a number of years, after which he sold the Heflin lease, together with an adjoining lease, for the sum of $35,000.00, the said adjoining lease being valued at $10,000.00, in the above consideration. He avers that one G. H. Reed, who was a silent partner, in the lease sold to Knipp by him, was entitled to half of the consideration, as evidenced by the notes of the value of $17,000.00 held in escrow by the Trust Company.

He prays that he and Reed may have a joint judgment against the plaintiff for said purchase money notes unpaid.

On the hearing, the Circuit Court refused the relief prayed for by the plaintiff and dismissed his bill. Myers and Reed were decreed a personal judgment against the plaintiff for the amount represented by the said thirteen promissory notes. This latter relief was based on the prayer of the cross-bill answer of the defendant Myers. And Knipp appeals to this Court.

Cancellation of instruments because of fraud is a specific ground of equitable jurisdiction. Hogg's Eq. Pr., Sec. 48; *Ryan* v. *Nuce,* 67 W. Va. 485; *Billups* v. *Music Company,* 69 W. Va. 15. It is too well settled to admit of doubt that the moving party in a suit to annul and cancel notes, has the burden of proof, and must establish the facts sufficient to justify a decree in his favor by clear and explicit evidence. *Deepwater Council* v. *Renick,* 59 W. Va. 343; *Mullen* v. *Searls,* 69 W. Va. 790. With these principles in view we may proceed to inquire how far the facts go to make a case. This case turns largely on the contents and legal effect of the lease on the Heflin coal which Myers produced at the time of the sale to Knipp, and from which the attorney drew the tentative assignment of such right, title and interest as Myers may have had in the coal underlying the Heflin farm. Knipp claims the existence of another paper which Myers is alleged to have had which gave him a larger right and interest in the Heflin farm. Myers denies the existence of such paper, and denies that he claimed to Knipp that he possessed such an instrument. On the contrary Myers contends that the lease exhibited at the attorney's office was his sole title to the Heflin coal, and that in addition to the one acre of coal conveyed actually, the lease contained provisions amounting to an option on the balance of the coal under the Heflin farm. He asserts that he repeatedly stated that the paper exhibited, and from which the contract was drawn, was all the interest that he had to convey. In this he is supported in some degree by the witness Boord, who was present at the time. The attorney who was consulted by the two litigants is not called to testify by either party. This leaves Knipp alone

in his claim that Myers represented he had a larger title to the coal under another lease which he had left at his home in Shinnston. The peculiar evidential value of the paper used at the trade is readily seen. This disputed paper is not produced. It is traced to the hands of the plaintiff. From his testimony it seems to have gone into the hands of the Heflins, at the time that Knipp claims to have secured another lease on part of the Heflin coal in his own name. This instrument on its face would have shown to the Court the truth or falsity of Myers' contention. The Court is left to testimony of witnesses, who speak only from recollection of what the paper contained. With the lease before the Court, its contents and legal effect could be with certainty determined. Both interested litigants have seemingly wilfully deprived the Court of the light that it was entitled to have concerning the pivotal points in controversy. The Heflins, whom Knipp claimed interfered with his possession of the property conveyed to him by Myers, and to whom Knipp says he delivered the controverted lease, did not testify. Why? Failure to produce the lease is laid by the testimony at the door of Knipp. The Court is entitled to the best evidence. The loss or impairment of evidence frequently turns the scales in the defendant's favor in cases of this kind. *Lafferty* v. *Lafferty,* 42 W. Va. 792.

There is another principle adopted by the courts, and which is often a controlling one, and that is that where one party to a contract intends to rescind and cancel on account of a breach of it by the other, he must do so speedily on the discovery of such breach. Delay in assertion of his rights is evidence of a waiver of the misconduct of the other party, and is itself deemed an election to treat the contract as valid and binding. *Grymes* v. *Sanders,* 93 U. S. 55; *McClean v. Clapp,* 141 U. S. 429. He cannot be allowed to remain passive, prepared to affirm the transaction if his coal operation were successful, or to repudiate it if it be to his advantage to do so. When there has been a long delay on the plaintiff's part in the assertion of his rights, as in this case, the courts are emphatic that he must make out a case plain, clear and decisive. 6 Cyc. 337; *Weidebusch* v. *Hartenstein,* 12 W. Va. 760. The plaintiff has

plainly failed to bear the burden cast upon him by the law. The lower court did not err in dismissing the bill, and to that extent the decree appealed from must be affirmed.

The Court below, however, upon Myers' alleged cross-bill answer and under his prayer for affirmative relief, pronounced a money decree in favor of said Myers and Gilmore H. Reed for the full amount of the notes and interest hereinbefore described. No rule is better settled than that there can be no decree for or against a party without proper pleadings. Pleadings are essential as proof, the one being the foundation for the other, the one being unavailing without the other. *Roberts* v. *Coleman,* 37 W. Va. 143; *Armentrout* v. *Armentrout,* 70 W. Va. 661. Reed was not a party in the cross-bill answer of Myers. True, Myers set up Reed's interest in his cross-bill and prayed for the relief based on such allegations. While this is not good pleading, it may be sufficient. However, his right to recover, as well as that of Myers, depends upon the case made in the cross-bill answer. As we have shown heretofore in this opinion, there is a great conflict in the testimony of Myers and Knipp. The condition upon which the notes were placed in escrow is shrouded in doubt. Even the proper officer of the Trust Company, the depository, has no recollection of the condition upon which said notes were delivered to his banking house. He does not know whether the condition was oral or written. If written such paper has been lost. For some inexplicable reason these notes seem to have been taken out of the depository. In this cause they were returned by the attorneys of Myers to the Trust Company with this statement: "In the month of June, 1919, at the request of George E. Myers and G. H. Reed you delivered to us a number of notes made by one L. O. Knipp to George E. Myers and aggregating $17,000.00 for the purpose of suit by us as attorney for Reed and Myers. There have been several suits instituted about this matter, including one by Knipp against Reed and Myers for cancellation of the notes in question. After considerable effort we were unable to get our clients to prosecute the suit or produce the evidence necessary to collect on the notes or to defend against the suit for cancellation, and accordingly some

time ago we notified Myers and Reed that we would go no farther and withdraw from the case.'' This does not tend to strengthen Myers' case, or show good faith on his part. In the facts alleged in the cross-bill answer necessary to entitle Myers to leave the legal forum and ask for relief in equity, he is held to the same degree of strictness in proof, which we have shown herein, is required of the plaintiff. Myers also fails to call as a witness the attorney, who drew the papers in controversy, to support his contentions. He likewise would benefit by the testimony of the Heflins, if the averments in his cross-bill are true concerning his interests in their coal property. The condition on which the notes were placed in escrow is vital to Myers' right to recover on them. Knipp and Myers are at variance on this point. Who, above all others, could state whether such escrow condition was oral or written, and what such condition was? The attorney who prepared the assignment and notes at the request of both parties. Knipp and Myers both agree that he acted as the agent of both in the transaction. Yet neither invokes his aid. Why? We have spared no labor in endeavoring to arrive at a just decision as to the right of the respective parties to this unfortunate transaction. We must infer from the very act of placing in escrow the signed notes of Knipp that their delivery to Myers awaited the performance of some condition, or the happening of some event, which did not depend on the act of Knipp. Otherwise, the notes would have been delivered directly to Myers. The evidence is conflicting and unsatisfactory as to what conditions were imposed by the escrow. Failing to establish the terms of the escrow by convincing proof, Knipp on the one hand, is not entitled to cancellation of the notes, and Myers on the other, is not entitled to collect them. Let them remain with the depository.

For reasons herein stated we are of opinion to affirm that part of the decree below which dismisses plaintiff's bill, but reverse the same in so far as it decrees a personal money judgment against the plaintiff in favor of Myers and Reed on their cross-bill answer, and dismiss said cross-bill answer.

*Affirmed in part; reversed in part; cross-bill answer dismissed.*