# Wytheville.

## C. E. WRIGHT AND COMPANY, INCORPORATED, v. O. L. SHACKLEFORD.

June 13, 1929.

The opinion states the case.

*Henry Bowden* and *William L. Parker*, for appellant.

*James G. Martin*, for the appellee.

HOLT, J., delivered the opinion of the court.

In the summer of 1927, Judge O. L. Shackleford, entered into negotiations with C. E. Wright and Company, through Mr. Aydelotte, its salesman and agent, for the purchase of a Hudson car. That company had in stock six or seven broughams, which had been in a measure superseded by newer models, and which it was anxious to sell. As an inducement, their list price was reduced by $250.00. Mr. Aydelotte brought to Judge Shackleford for inspection and demonstration one of them. Judge Shackleford and his wife both drove it. It ran smoothly, appeared to be in perfect condition, and before the purchase was tried out again with the same satisfactory results. At this second trial, which was on July 26, 1927, Judge Shackleford advised Mr. Aydelotte that he would take this identical car if delivered that afternoon. Later Mr. Aydelotte informed him over the telephone that the particular car shown had, in his absence, been sold by another salesman, but that he would equip, oil and grease a perfectly new one then in the warehouse, and bring it over later that evening. During the progress of these negotiations some question arose as to excessive use of gas by Hudson cars, and this salesman said that certain changes had been made in the engine model which decreased consumption, and that in his judgment it would now make from fourteen to sixteen miles per gallon of gasoline. That it failed to do.

When the car was brought around, Judge Shackleford was not at home. Mrs. Shackleford went to ride in it and noticed a very unusual jerk whenever the clutch was let in, and also that its operation was both noisy and disagreeable, but was told that these defects were due to the newness and would disappear with use.

When the judge returned home late in the day, the contract of purchase was signed. He was then assured that this particular car ran smoothly and was in perfect condition, although the agent making these representations knew at the time that they were not true. Next morning complainant went to Suffolk and was driven to the station by his wife. He also then noted the trouble, but was told by his wife that Aydelotte said it was due to the stiffness of a new machine and would soon disappear with operation. Upon the following morning he went back to Suffolk, and on this occasion drove himself. The same defects again became patent and upon comment was again reminded by his wife of the agent's assurance that they would soon correct themselves.

Mrs. Shackleford had planned to go to their country home, about 130 miles distant. Judge Shackleford did not want to disappoint her. His statement is: "I knew that she was going away the next day to the farm, and I knew that she had no other car to drive, and I thought I would just let the matter stop there." She did go. On August 2nd he joined his wife. They continued to use the car, and the trouble was always apparent. Mrs. Shackleford, for some personal reasons, came back to Norfolk on August 22nd, and on the 23rd took the car to the Wright Company and went with it over the defects which had developed. She returned that afternoon but found that nothing had been done and was told that the engine would have to be taken

down to make necessary repairs, and to bring it around next morning. She took it back that afternoon and came for it on the 24th. Still nothing had been done, but respondent said that she could, with confidence, drive to the farm, and again assured her that the trouble was due to newness, and that upon her return to Norfolk the company would "make it satisfactory" if it had not disappeared. She did drive it back to the farm and used it there until they returned to Norfolk on the 7th of September. Judge Shackleford was much dissatisfied with the situation and called in an expert mechanic, Mr. Edwards, who on September 11th explained just what the imperfections were; that they were due to a defective clutch and to a "piston slap," or to a loose and ill-fitting piston. Edwards saw Mr. Wright, at complainant's suggestion, and reported that "they said to bring the car around there and they would make these things good." Judge Shackleford was distrustful, and on September 13th wrote saying in part:

"I hesitate to consent to have this done by a mechanic who has stated to Mrs. Shackleford that the car is already in perfect condition, but I will agree to let you do this, without cost to me, including the job of locating and eliminating the noise which Mr. Edwards was unable to locate, if it is done with the understanding that if after thirty days' trial these troubles or any of them recur, I may turn the car back and have my contract rescinded and my old car taken in trade returned to me."

To this the company replied by letter on the 15th, in which it said:

"We are perfectly willing to do anything to your car to put it in proper operating condition. The car is guaranteed by the factory, which guarantee is printed

in the front part of the instruction book. The guarantee calls for the owner to pay for the labor charges, the factory replacing the parts. This condition, however, we have waived and in this case would stand the labor charges ourselves.

"However, we cannot agree to take your car back as stated in your letter. We think that on further consideration you will agree that this would be impossible for us to do. We are willing and anxious, though, to see that your car is put in condition to be entirely satisfactory to you, and if you will have the car brought to us, or allow us to send for same, we will take immediate steps to accomplish this. We feel certain that when we have finished with the work on your car that you will be pleased with it, and if you do have any further trouble with same, you can be assured that we will do everything in our power to correct it, regardless of when it may occur."

This statement Judge Shackleford construed as a definite refusal on the part of the company to take the car back. At that time it had been run about 3,500 miles. He continued to use it in a limited way until about December 12th. The additional mileage during this time was somewhere between 250 and 275 miles. Suit was instituted on October 15th.

The rattling in the mechanism charged in the bill was due to a loose washer, and, as Judge Shackleford testified, was "very inconsequential" so that substantial defects to be considered are those which lay in the clutch and in the pistons.

As is shown by its letter of the 14th, this company was willing to make all necessary changes and repairs; it was willing to put in a new clutch and new pistons and a new engine, and, if necessary, the engine then being used on the new models, which was supposed to

be a superior one, all to be done at the company's expense. A new clutch put in would have cost, at the outside, about $16.00, and an entire new set of pistons about $70.00. A complete new engine installed would have cost about $800.00. These changes the company was willing to make without prejudice, but Judge Shackleford was unwilling to accept them unless the company, on its part, would agree to take the car back if any of the old troubles reappeared at the end of thirty days, and it was on this rock they split.

Complainant in his bill asks that the contract of purchase be rescinded because of fraud in its procurement. In due season the cause was matured, depositions were taken and, upon argument, submitted to the chancellor who was of opinion that the complainant was entitled to the relief prayed for and so decreed, and it is from this decree that the defendant has appealed.

The correctness of the judgment of the court below must be presumed.

██ ██ "The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail. *Harman* v. *City of Lynchburg*, 33 Gratt. (74 Va.) 43. *Kiser* v. *Hannah*, 148 Va. 594, 139 S. E. 279.

"When a chancery cause is heard upon depositions the rule which governs common law judgments, where the entire case is submitted to the judge, does not obtain, although if the chancellor heard evidence in open court there would be no sound reason for such a distinction. Here all that can be said is that the burden is upon the appellant to show error.

■ "That fraud, as a matter of fact, was practiced is plain. The car when delivered was not in perfect condition, did not run smoothly, and this the salesman knew. It is likewise plain that the defects in clutch and piston were material. It follows that complainant would be entitled to relief had he proceeded with promptness to repudiate his purchase.

■ "It is an established doctrine that when a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud. If after the discovery of the fraud he treats the contract as a subsisting obligation, he will be deemed to have waived his right of repudiation. Prompt action is essential when one believes himself entitled to a rescission of a contract. *Max Meadows, etc., Co.* v. *Brady,* 92 Va. 71, 22 S. E. 845; *Hudson* v. *Waugh,* 93 Va. 518, 25 S. E. 530; *Hurt* v. *Miller,* 95 Va. 32, 27 S. E. 831; *West End Co.* v. *Claiborne,* 97 Va. 734, 34 S. E. 900; *Campbell* v. *Eastern Building Asso.,* 98 Va. 729, 37 S. E. 350." *Finch* v. *Garrett,* 109 Va. 114, 63 S. E. 417. See also *Hagan* v. *Taylor,* 110 Va. 9, 65 S. E. 487; *McLean* v. *Clapp,* 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804; *Hogan* v. *Anthony,* 52 Cal. App. 158, 198 Pac. 47; *Knipp* v. *Myers,* 98 W. Va. 151, 126 S. E. 575; Black on Rescission and Cancellation, page 1388.

■ The reasonableness of this rule is aptly illustrated in the case of automobiles whose sales value rapidly depreciates with use. Fair dealing requires that one who claims to have been defrauded in such a sale should bring that matter to an issue as soon as possible.

■ Delay, however, at times, may be entirely reasonable. We look to the circumstances which occasioned it. *Branch* v. *Buckley,* 109 Va. 784, 65 S. E. 652; *Cerriglio* v. *Pettit,* 113 Va. 533, 75 S. E. 303; Black on Rescission and Cancellation, section 600; *International*

*Harvester Co.* v. *Bean*, 159 Ky. 842, 169 S. W. 549; *Schroeder* v. *Hotel Co.*, 84 Wash. 685, 147 Pac. 417.

"What is a reasonable time within which the offer to rescind may be made may depend upon a number of circumstances and in each particular case of this kind the circumstances may be different.  *  *  *  Unless he had it such a length of time as would indicate that he was satisfied with it or that he was merely retaining it for the service he was deriving from it, such holding was not unreasonable.  The evidence shows that he did not use it every day of the time he retained it. *  *  *  That he was in good faith giving it a trial, and not merely keeping it for the use he was making of it." *International Harvester Co.* v. *Bean, supra.*

■ "Delay in formal rescission induced by promises of the vendor to make machinery work properly is not a waiver of the right to rescind." *Schroeder* v. *Hotel Co., supra.*

■ ■ These authorities warranted complainant in using the car after he had ascertained that something was the matter with it but had been told that the machinery was new and stiff; that the trouble which had developed was due to this cause and would disappear with use.  It did not disappear and there was no tendency to disappear.  This was sufficient to put him on notice that something was radically wrong, nor was it necessary that he drive 3,500 miles to find it out.  But suppose it was.  It is plain that this right was at an end when respondent, by its letter of September 14th, definitely refused to rescind the sale and was so understood by complainant.  Any right to use then terminated. *Fred W. Wolfe Company* v. *Monarch Refrigerating Company*, 252 Ill. 491, 96 N. E. 1063, 50 L. R. A. (N. S.) 808.

However much reliance may have been placed upon assurances theretofore given, and however much complaint may have been lulled into a misguided sense of security by all that had gone before, the inescapable fact remains that they were swept away by this letter of the 14th. Upon its receipt he was then called upon to accept the offer to repair or to tender the car to its vendor if he wished to rescind the contract of sale.

It is true that after then use was less than it had been, but the parties had returned to town and there was less occasion for extended trips. Mileage to December 12th was only from 250 to 275 miles, but it was mileage consumed for personal convenience.

Mrs. Shackleford has testified:

"Q. Well, how far has the car been driven now, up to date?

"A. Three thousand seven hundred and fifty-eight, and then I drove down town this afternoon.

"Q. You have been using it every day?

"A. Not every day. I have been using it off and on. I have not been out of Norfolk with it. I have been using it coming down town to market and back home. I have not been out on any pleasure ride, nor out of town, although there were right many trips I might have taken but did not, as I did not want to use the car.

"Q. You have used it more or less constantly?

"A. Just in town. Not every day, sometimes two or three days that I don't use it. I have not used it anything like as much as I would have if it had been all right. I have been in Baltimore two weeks, and I don't think it was out of the garage while I was there."

This is Judge Shackleford's statement:

"By Mr. Martin: Q. Judge, regarding the use of this car since this suit has been brought and its present whereabouts, tell us about that, please, in a few words,

as I have got to catch a train is the reason I say in a few words.

"A. I had advice through Mrs. Shackleford that C. E. Wright and Company had instructed her to drive the car with the view of having these noises clear up, and I gave my consent to her driving it occasionally in town but not outside of the city in order to determine, by the time depositions were taken, whether there was any merit in their advice concerning this matter. I think the car was driven about 275 miles from the time I returned from the farm up to the time the first depositions were taken and perhaps less than 100 miles from the time suit was brought on October 15th to the time the depositions were taken. After she and I had testified that the condition of the car was in all respects the same on the day we testified as they were on July 26, 1927, I instructed her not to drive the car any more, nor did I drive it any more, except to drive it from my house in the city to the store room of the Oldsmobile agency on Granby street, where it was stored and where it has been since that time."

To explain this it is said the complainant was told that the use of a certain special oil might help. Oil might help a grabbing clutch but could not aid a defective piston.

The petition for relief comes too late. Plaintiff cannot recover for another reason. The vendor offered to make all repairs necessary to the proper operation of the car. This offer the purchaser declined unless the selling company, upon the happening of certain contingencies, would give its unqualified promise to take the car back at the end of thirty days. Judge Shackleford was fretted over the treatment he had received, and this is readily understandable, but it led to the

imposition of unreasonable conditions. The right to repair should have been given without prejudice.

When Mrs. Shackleford returned to the farm in August, the extension of use then granted was coupled with the promised that the Wright Company would, upon her return, if the trouble continued, "make it satisfactory," which plainly contemplated that it should be given an opportunity to "make it satisfactory." Here was an obligation assumed and a right retained, conditions acquiesced in.

Soon after the purchase the vendor sent to the buyer a circular in which this appears:

"The Hudson Motor Car Company's service policy of handling adjustments on any defective material or workmanship is strictly in accordance with the National Automobile Chamber of Commerce ninety-day warranty as set forth in the instruction book which you received when purchasing your car. We therefore will follow this plan of operation without exception. In the majority of cases a defect will show itself within a very short time after the car is placed in operation, and it should be corrected immediately upon appearance."

Defendant, in its letter of September 14th, as stated above, said: "We are perfectly willing to do anything to your car to put it in proper operating condition. The car is guaranteed by the factory, which guarantee is printed in the front part of the instruction book. The guarantee calls for the owner to pay for the labor charges, the factory replacing the parts. This condition, however, we have waived and in this case would stand the labor charges ourselves."

All of this is entirely reasonable. Defects may develop in any machine, however carefully inspected, and it was in the protection of such rights that the

vendor obligated itself for a period of ninety days to make any necessary replacements, and as a corollary thereto retained the right to make them.

██ ██ "Unless there is a definite condition to that effect, the buyer is not obligated, as a condition precedent to recovery on the warranty, to allow the seller to remedy defects. If, however, the contract so stipulates, no liability for a breach of warranty attaches until the seller has had an opportunity to remedy defects, but on such opportunity being afforded by proper notice, the failure or refusal of the seller to act fixes his liability. So too an unsuccessful effort to remedy the defects renders the seller liable on his warranty, and the buyer is not bound to allow him a second opportunity. On the other hand, an offer on the part of the seller to remedy defects not accepted by the buyer releases the seller from liability on the warranty, provided the offer or effort to repair is made within a reasonable time." 35 Cyc. page 428. See also, *Steelecote Mfg. Co.* v. *Byrnes*, 176 Ark. 562, 3 S. W. (2d) 331; *Berman* v. *Langley*, 119 Me. 124, 109 Atl. 393; *Fealk Economy Baler Co.*, 223 Mich. 45, 193 N. W. 787; *Mayes* v. *McCormick Harvester Co.*, 110 Ga. 545, 35 S. E. 714; *Gaar, Scott & Co.* v. *Halverson*, 128 Iowa 603, 105 N. W. 108; Williston on Sales (2d ed.), section 611-a.

██ Relative to the consumption of gasoline, no complaint was made until suit was brought. Manifestly this delay was unreasonable.

For the foregoing reasons we are of opinion that the decree appealed from should be reversed and the cause dismissed. It is so ordered.

*Reversed.*